UNITED STATES, Appellee

v.

WILLIE L. MOORE, Private E–2, U. S. Army, Appellant

5 USCMA 687, 18 CMR 311

688

No. 5026

Decided April 22, 1955

Lt Col Joseph L. Chalk, U. S. Army, Lt Col James C. Hamilton, U. S. Army, Maj Edwin Doran, U. S. Army, Capt Glade F. Flake, U. S. Army, and 1st Lt David J. Conroy, U. S. Army, for Appellant.

Lt Col Thomas J. Newton, U. S. Army, Lt Col William R. Ward, U. S. Army, and 1st Lt Benjamin C. Flannagan, U. S. Army, for Appellee.

Opinion of the Court

PAUL W. BROSMAN, Judge:

A general court-martial sitting at Munich, Germany, found the accused soldier guilty under two specifications of aggravated assault, in violation of the Uniform Code of Military Justice, Article 128, 50 USC § 722. He was sentenced to receive a dishonorable discharge, together with total forfeitures and confinement at hard labor for five years. The findings and sentence were approved by the convening authority and affirmed by a board of review in the office of The Judge Advocate General. Review was granted here to determine the admissibility of certain evidence adduced before findings, which revealed that the accused had been previously

convicted of wrongfully using a military pass with attempt to deceive.

## II

According to the evidence presented by the Government, the accused, on the evening of December 31, 1953, had become engaged in an altercation with an airman named Whitfield at a club in Regensburg, Germany. After the dispute had begun, the accused struck Whitfield with a knife, or other sharp instrument, and cut his clothing. With the same weapon he slashed the cheek of a German girl who was in Whitfield's company. Prosecution witnesses testified that these acts of aggression were unprovoked by conduct on Whitfield's part. However, defense testimony indicated that Moore was an even-tempered person who had not been known to bear a knife as a weapon. Moreover witnesses, who claimed to have been present at the Regensburg club on the evening in question, denied that they had seen a knife, or other weapon, used during the accused's struggle with his victims.

The accused took the stand in his own behalf. According to his account—corroborated as to certain details by other witnesses—Whitfield struck the first blow. Moore insisted, too, that at no time had he carried a knife; that he did not possess one on December 31; and that he had struck no one with a weapon at that time. In cross-examination, trial counsel presented the problem which is before us now. He opened by suggesting that the accused was at the time of trial a private, although he had been in the Army for twenty-one months. The colloquy continued as follows:

"Q. One of the reasons you are still a private is because at one time you were convicted by a court-martial of using a false pass—

"DEFENSE: I object to this. There is no showing of any offense involving moral turpitude. It is highly prejudicial to introduce a previous conviction at this time.

"LAW OFFICER: Let the record show that an out-of-the-hearing of the court conference was held be-

tween the law officer, counsel for both sides, and the accused.

"The objection is overruled.

"Q. As I started to ask before, Moore, one of the reasons you are still a Private is because in September of 1953 you were convicted by a court martial of wrongfully using with intent to deceive a pass knowing it to be unauthorized, is that correct?

"A. Well, I was found guilty of that, sir, but I also have my pass—

"Q. I said convicted of it. You were found guilty of that by a court martial?

"A. Yes, sir."

After findings of guilty were returned, the prosecution offered in evidence an extract from the service record of the accused. There it was shown that a summary court-martial had convicted him of having wrongfully used on September 1, 1953, "with intent to deceive an official pass, well knowing the same to be unauthorized."

## III

The Manual for Courts-Martial, United States, 1951, authorizes several methods for impeaching the credibility of a witness. For example:

"A witness may be impeached by showing that he has been convicted by a civil or military court of a crime which involves moral turpitude or is such as otherwise to affect his credibility. Proof of such conviction may be made by the original or an admissible copy of the record thereof, or by an admissible copy of the order promulgating the result of trial. Before introducing such proof, the witness may first be questioned with reference to the conviction sought to be shown. If the witness admits the conviction, other proof is unnecessary." [Paragraph 153b (2) (b).]

The foregoing passage makes clear that, if the offense of wrongfully using a pass with intent to deceive is one which involves moral turpitude, or otherwise affects credibility, then it would be proper to permit the cross-examination of an ordinary witness concerning that offense.

The suggestion is frequently heard, however, that an accused should be treated somewhat differently from an ordinary witness with respect to evidence of previous convictions. The theory behind this suggestion, of course, is that, after evidence is heard with respect to an accused's prior misdeeds, the jury, or the court-martial, is prone to find him guilty of the charge under which he is being tried, for the reason that he is a bad man—and without concern to his guilt of that offense. The accused is thus convicted not because of his established guilt, but because he is considered by the triers of fact to be so antisocial in nature—as indicated by his previous crimes—that he should be punished regardless of whether he is guilty of the offense charged. It is probable that the danger that such reasoning may be adopted largely explains the reluctance of defendants with long criminal records to testify. See Comment, American Law Institute Model Code of Evidence, 1942, Rule 106(3).

The opposed view rests on the premise that judicial experience has revealed that the prior misconduct of a witness is a circumstance to be scrutinized closely in determining whether he has testified truthfully. Thus, the argument runs, an accused should not be accorded a favored position to perpetrate judicial falsehoods—with the result that his credibility must be subjected to the same tests as that of any other witness. This latter approach has been accepted by the Manual's draftsmen, who provided that:

> "An accused person who voluntarily testifies as a witness becomes subject to cross-examination upon the issues concerning which he has testified and upon the question of his credibility. So far as the latitude of the cross-examination is discretionary with the court, a greater latitude may be allowed in his cross-examination than in that of other witnesses." [Manual, supra, paragraph 149b (1).]

See also United States v. Webb, 1 USCMA 219, 2 CMR 125.

The only palliative for whatever harshness may inhere in this rule would seem to lie in an instruction by the law officer to the effect that evidence of prior offenses on the part of an accused is limited to an impeachment purpose, and can in no wise be regarded as evidence of guilt. The law officer may also wish to inform the court—whether in respect of an accused, or of any other witness who has been impeached by evidence of prior misconduct—that a showing of past offenses does not necessarily and of itself require the conclusion that the witness' testimony before the court is false.

With reference to the present effort at impeachment, we are confronted with the argument of appellate defense counsel to the effect that the offense concerning which Moore was examined amounted to no more than a trifling military dereliction, which does not involve moral turpitude. We must confess that, if the prior offense were inherently so trivial as counsel have considered it, it is difficult to see how the court-martial could have given it substantial weight—and therefore to understand how it may have been materially prejudicial. We shall, however, depart from this route and meet the problem raised by the term "moral turpitude."

As the Supreme Court has pointed out:

> ". . . The presence of moral turpitude has been used as a test in a variety of situations, including legislation governing the disbarment of attorneys and the revocation of medical licenses. Moral turpitude also has found judicial employment as a criterion in disqualifying and impeaching witnesses, in determining the measure of contribution between joint tort-feasors, and in deciding whether certain language is slanderous." [See Jordan v. De George, 341 US 223, 227, 95 L ed 886, 71 S Ct 703.]

The phrase "moral turpitude" often appears in divorce statutes. Menna v. Menna, 102 F2d 617 (CA DC Cir); 135 ALR 851. This test, among others, is

**691**

used in determining entitlement to veterans' benefits. See 38 USC § 447. Similarly, the deportability and exclusion of aliens frequently hinges on an interpretation of "moral turpitude." See 8 USC §§ 1182(a)(9), 1251(a)(4).

In fact, it was within the context of a deportation proceeding that the Supreme Court sought to interpret the phrase "moral turpitude" in Jordan v. De George, supra. There the offenses involved efforts to defraud the United States of taxes on alcohol. The alien, De George, contended "that Congress had in mind only crimes of violence"—with the result that his violations of the Internal Revenue Code would not render him deportable. After examining this and other proposed or possible constructions of "moral turpitude," three members of the court held in dissent that the phrase was so vague as to require that this deportation criterion be denied as unconstitutional. Perusal of their opinion will make clear our reason for avoiding an attempt to set down a comprehensive definition of the phrase in question.

The Manual does observe that offenses "such as larceny, forgery, maiming, and the like involve moral turpitude." See paragraph 128b. Of more aid for present purposes, however, is the Supreme Court's holding in Jordan v. De George, supra, to the effect that offenses of which fraud is an element involve moral turpitude. As the majority emphasized there, "Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude." Id. at page 227.

The prior conviction of the present accused was returned under a specification alleging an intent to deceive, rather than one to defraud. It will be remembered, however, that in certain contexts fraud is considered to exist although no pecuniary loss has occurred. For example, in one case the term "fraud" was deemed to include any sort of conduct calculated to obstruct or impair the efficiency of the United States and destroy the value of its operations and reports as fair, impartial, and reasonably accurate. Haas

**692**

v. Henkel, 216 US 462, 54 L ed 569, 30 S Ct 249. See also United States v. Taylor, 4 USCMA 232, 15 CMR 232. In like vein is the ruling of the Court of Appeals for the Second Circuit in United States ex rel Popoff v. Reimer, 79 F2d 513, an opinion cited by the majority in Jordan v. De George, supra. The Court of Appeals held there that a conviction of aiding an applicant in the making of false statements for the purpose of securing naturalization constituted one involving moral turpitude. It was pointed out that criminal frauds with respect to property have universally been deemed to involve moral turpitude, and the Court thereafter reasoned that the fact "That the fraud relates to obtaining rights of citizenship rather than to property does not, we think, make it any the less contrary to community standards of honesty and good morals." Similarly, we are sure that the present accused is not to be exculpated for the reason that he was seeking by the deceitful use of a military pass illegally to obtain privileges and rights unrelated to property. Accordingly, we feel that Moore's prior conviction fell within the full thrust of Jordan v. De George, supra, and so must be deemed a conviction of an offense involving moral turpitude.

IV

Government appellate counsel have adverted to other proposed criteria for determining the admissibility of evidence of prior convictions. One is whether the prior offense amounted to a felony. At early common law, by the term felony "was understood any offense which at common law occasioned a total forfeiture of the offender's lands, or goods, or both. 4 Bl. Com. 94, 95, 310." See ex parte Wilson, 114 US 417, 423, 5 S Ct 935, 938, 29 L ed 89. See also Clark and Marshall, The Law of Crimes, 5th ed, 1952, § 3; Black's Law Dictionary, Felony, 4th ed, page 744. What constitutes a felony today differs among the American jurisdictions. 14 Am Jur, Criminal Law § 13. However, under 18 USC § 1, a Federal offense punishable by more than one year's confinement is a felony. It is

to be observed that the classification of an offense under this test is determined by the punishment *assessable*—and that the punishment actually imposed in a particular case is wholly irrelevant. Cartwright v. United States, 146 F2d 133 (CA 5th Cir); 14 Am Jur, supra. Cf. Mackin v. United States, 117 US 348, 29 L ed 909, 6 S Ct 777.

For the use of a false or unauthorized military pass with intent to deceive, the Table of Maximum Punishments set out in the current Manual for Courts-Martial authorizes a penalty of dishonorable discharge, total forfeiture of pay and allowances, and confinement at hard labor for three years. Under the standard established in 18 USC § 1, the accused's previous offense would certainly qualify as a felony. The severe maximum punishment imposable is, we are sure, no accident—for the United States Code contains a close analogue to this provision of 18 USC § 499, stating that:

> "Whoever falsely makes, forges, counterfeits, alters, or tampers with any naval, military, or official pass or permit, issued by or under the authority of the United States, or with intent to defraud uses or possesses any such pass or permit, or personates or falsely represents himself to be or not to be a person to whom such pass or permit has been duly issued, or willfully allows any other person to have or use any such pass or permit, issued for his use alone, shall be fined not more than $2,000 or imprisoned not more than five years, or both. (June 25, 1948, ch. 645, § 1, 62 Stat. 712.)"

Though intent to *defraud* is used there —and not intent to *deceive*—it is clear from the palpable object of the statute that its provisions were not meant to apply solely to instances involving efforts to defraud the United States of *property* through the use of a false military pass. Cf. Haas v. Henkel, supra.

In addition to the maximum punishment assessable for Moore's prior offense, and its close resemblance to a crime specifically made punishable by the United States Code—which crime would clearly constitute a felony under the test of 18 USC § 1—we recognize a further theory by which the use of a false or unauthorized pass with intent to deceive assumes the aspect of a felony. Paragraph 76a(6) of the Manual for Courts-Martial notes that "dishonorable discharge should be reserved for those who should be separated under conditions of dishonor, after having been convicted of offenses usually recognized by the civil law as felonies, or of offenses of military nature requiring severe punishment." In light of this provision, we have indicated that an offense for which a dishonorable discharge is imposable might properly be analogized to a felony. See United States v. Marrelli, 4 USCMA 276, footnote 2, 15 CMR 276.

In the Federal courts a prior conviction of a felony has been held a proper basis for the impeachment of a witness.[1] In a quite recent opinion—which in

---

[1] Typical statements are the following: "A felony is undisputably such grade of offense as by conviction thereof affects credibility." See Williams v. United States, 3 F2d 129, 130 (CA8th Cir); "It is well settled that the prior commission of a felony by a witness may be proved for the effect it may have upon his credibility." See Fire Ass'n of Philadelphia v. Weathered, 62 F2d 78, 79 (CA5th Cir); "It is likewise settled that for the purposes of such impeachment it is competent to show that the witness has been previously convicted of a felony." See Henderson v. United States, 202 F2d 400, 405 (CA6th Cir). "Since the passage of Criminal Code, § 335, on March 4, 1909 (35 Stat. 1152 [18 USCA § 541]), making all offenses punishable by a term exceeding one year felonies, we believe that in the general opinion of the public, from which jurors are drawn, the conviction of an offense punishable by a penitentiary sentence, whether it were a felony by common law or is made so by statute, is considered infamous and a matter which jurors may well regard as of importance as bearing upon a witness' credibility." Scaffidi v. United States, 37 F2d 203, 211 (CA1st Cir). Cf. Gordon v. United States, 254 Fed 53, (CA5th Cir); Fisher v. United States, 8 F2d 978 (CA1st Cir); Beaty v. United States, 203 F2d 652 (CA4th Cir); Unit-

fact sharply limits the area of cross-examination permissible for impeaching a witness—the Court of Appeals for the Second Circuit does not appear to question the principle under discussion when it observes that: "As generally held [in the Federal courts], specific acts of misconduct not resulting in a conviction of a felony or crime of moral turpitude are not the proper subject of cross-examination for impeachment purposes." United States v. Provoo, 215 F2d 531, 536. This statement seems clearly to assume that a *conviction* of felony is a proper subject of cross-examination for impeachment purposes.

In military law under the 1921 Manual for Courts-Martial the rule was that:

"Evidence of the conviction of any crime, even by a foreign tribunal and whether felony or misdemeanor, is admissible for the purpose of diminishing the credit due to his testimony." [Paragraph 258.]

That rule resembles that of the District of Columbia, under which any prior conviction, whether felony or misdemeanor, may properly be made the subject of cross-examination of a witness. See Campbell v. United States, 176 F 2d 45 (CA DC Cir).

By the 1928 Manual for Courts-Martial the rule was changed to read:

"Evidence of conviction of any crime is admissible for the purpose of impeachment where such crime either involves moral turpitude or is such as to affect the credibility of the witness." [Paragraph 124b.]

In this form it remains today.

Although the 1928 change considerably limited the realm of impeachment, there is no showing that it was meant to effect a change from the Federal rule that a witness may be interrogated about prior conviction of a *felony*. To have sought to do so would appear to be especially incongruous, since the military precept as to impeachment by cross-examination concerning "acts of misconduct" is distinctly more liberal than that applied by many Federal courts. See United States v. Berthiaume, 5 USCMA 669, 18 CMR 293. Use of the category of felony as one reagent for delimiting those offenses which may be used for impeachment, provides the military practitioner with a reasonable amount of certainty as to what is or is not permissible—an assurance which is manifestly lacking in the phrase "moral turpitude." Actually there is some authoritative justification for the view that a felony necessarily involves moral turpitude.[2] Certainly this is arguable as to Federal crimes—for we understand that, in pro-

---

ed States v. Fay, 19 F2d 620 (SD Idaho); Matthews v. United States, 145 F2d 823 (CA5th Cir).

[2] In one case, the Commissioner of Immigration sought to deport an alien who had been convicted by the state of Washington of being a "jointist." This crime was a felony under state law. The court remarked that "any one who willfully opens a place for conducting a business which is positively forbidden and made punishable by law as a felony is guilty of an offense which involves moral turpitude." Rousseau v. Weedin, 284 Fed 565 (CA9th Cir). Apparently the court considered that the term "felony" possessed a definite connotation of moral turpitude. We believe that the phrase has this same overtone in ordinary parlance.

On the other hand, in Jordan v. De George, supra, the Supreme Court in no way suggests that a felony is *per se* a crime of moral turpitude. Similarly,

in § 16–403, the District of Columbia Code permits divorce on the ground of "final conviction of a felony involving moral turpitude." By negative implication Congress must have meant that for this purpose some felonies do *not* involve moral turpitude. In the Immigration Acts, the phrase "moral turpitude" first appeared in a provision excluding aliens "who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude." Jordan v. De George, supra, footnote 14. It would appear that the phrase "involving moral turpitude" could well be construed solely to modify the word "misdemeanor." However, the Federal courts seem to have applied it distributively—and so have inquired whether an alien's prior felony conviction *did* involve moral turpitude.

This is rather incongruous in several respects. That same conviction of felony was considered a serious enough

694

mulgating the current Criminal Code, an effort was made to reconcile the punishment imposable, on the one hand, with the moral turpitude involved in the offense, on the other. Thus an attempt was made to avoid a maximum penalty of more than one year—one which would render the crime a felony—as to *mala prohibita* offenses. See 18 USCA § 1, Historical and Revision Notes, page 427. In light of paragraph 76a(6) of the current Manual for Courts-Martial, and the very import of the term "dishonorable discharge," we are sure that a similar caution must have been exercised in framing the military's Table of Maximum Punishments.

Regardless, however, of whether the concept of felony possesses overtones of moral turpitude, we do not doubt that a prior conviction of a felony is properly a subject of impeachment inquiry. The reason for its consideration in a Federal civilian court is that it attacks credibility. It would be difficult then for us to say that the same conviction would not "affect credibility" within the meaning of paragraph 153b(2)(b) of the Manual. Especially is this true, since the Manual presumably was framed by the President in compliance with the duty, "so far as he deems practicable, [to] apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts." Article 36, Uniform Code, 50 USC § 611.

From the foregoing discussion the following principles evolve. If a witness has been convicted by a Federal civilian court of a crime characterized as a felony, that conviction may be used to impeach testimony forthcoming from him. If he has been convicted by court-martial of an offense for which confinement in excess of one year, or a dishonorable discharge, is imposable, that offense, too, can be used for an impeachment purpose. Despite the conceivable contrary implication of the words of paragraph 76a(6) of the Manual, we reject forthwith any notion that a prior conviction of an offense for which a dishonorable discharge is imposable may not be used, if that offense was "of a military nature." Such a distinction would be illusory indeed. For example, an illicit seller of liquor, convicted of defrauding the United States of revenue, has been said to be guilty of an offense involving moral turpitude, and could be thus impeached. Cf. Jordan v. De George, supra; United States v. Reimer, 113 F2d 429 (CA2d Cir). However, a soldier convicted of a serious military offense, say an extended absence without leave from a combat area, or an act of outright desertion, would not be subject to impeachment by reason of the prior offense—apparently on the assumption that he is the more credible. Yet the soldier has—in a broad sense at least—defrauded the Government of his own loyal services, just as the liquor vendor has defrauded that Government of possible taxes. We entertain no doubt that an offense serious enough to bear the stigma of a dishonorable discharge possesses the seriousness of felony, and as well bears a heavy content of moral

---

matter in the Federal courts to be used permissibly in the impeachment of witnesses. If a conviction reflected such degeneracy and perverseness of character as to create a likelihood that a witness will falsify under oath, why would it not reveal the baseness signified by moral turpitude? The gravity considered to reside in felony is evident in other phases of law, as well. A police officer under common law, and under the present rule in many jurisdictions, could not arrest without a warrant for a misdemeanor unless it were committed in his presence; but he could properly arrest if he had reasonable cause to believe that a felony had been committed. Maghan v. Jerome, 88 F2d 1001 (CA DC Cir). See also 18 USC § 3053. Even a private citizen may arrest for a felony committed in his presence. See Coplon v. United States, 191 F2d 749 (CA DC Cir), cert denied 342 US 926. An "assault with intent to commit any felony" is made specially punishable. 18 USC § 113; cf. United States v. Gill, 204 F 2d 740 (CA7th Cir). For many years, too, a prior conviction of felony constituted an absolute impediment to enlistment in the Army—although now this shortcoming may be waived. See 10 USC § 622.

turpitude. We cannot approve of any sort of view which minimizes the gravity of offenses merely because they are of "a military nature." Regardless of the situation in more tranquil times, we are sure that, during today's national peril, one who shirks a compelling obligation to the Armed Forces—the importance of the service being attested by the penalty assessable for its denial —is as steeped in turpitude as the run-of-the-mill felon.

What rule, however, applies to a state court conviction sought to be used in impeaching credibility? Of ■■■■■■ ■ course, if the conviction has to do with an offense, like larceny or forgery, which in paragraph 128b of the Manual for Courts-Martial is specifically denounced as involving moral turpitude, no distinction should lie which is based on whether, under the local law, the crime is a felony, on the one hand, or a misdemeanor, on the other—and assuming that the jurisdiction involved recognizes the felony-misdemeanor dichotomy. If, under local law, the prior conviction is regarded as a felony, we also deem it admissible for an impeachment use— for we have observed no effort on the part of Federal courts to differentiate for this purpose a state conviction of felony from a Federal one. In the unlikely event that the jurisdiction in which the prior conviction occurred permits punishment for more than one year for the offense in question, but does not consider it a felony, we would not incline to invoke directly the test of 18 USC § 1 to denominate the crime a felony for court-martial purposes.[3] If, though, the offense is closely analogous to a crime made punishable by the United States Code as a felony, we would be willing to equate the state offense to a felony for the present purpose.

It may be suggested that for the fluidity of the concept of "moral turpitude," we are substituting a series of rules based on the penalty imposable for an offense. Such a comment does not deter us, however—for we have no hesitation in adopting the quantum of punishment imposable as a rule-of-thumb for determining an offense's gravity. After all, if there is aught to criminological theory, the punishment assessed against a crime mirrors well the public disapprobation of that offense—with a certain amount of leeway, of course, for anachronistic statutes which have not been repealed. Turpitude, too, may not inappropriately be deemed the obverse of the public disapprobation of the act involved. Further, a witness who previously had not been deterred from crime by a serious penalty, might well pay less heed than the average man to the penalties assigned for perjured testimony.

## V

It has been urged upon us that the circumstance that Moore's previous conviction for wrongfully ■■■■■■ ■ using a pass with intent to deceive was returned by a summary court-martial should serve to render the conviction inadmissible. Initially we must record some doubt that the record of trial really raises this matter for review. During the cross-examination of the accused— earlier quoted herein—no mention was made of the fact that the previous conviction emanated from a summary court. Nor do we find reason why the law officer should be obliged to assume that this had been the case.

Although the defense interposed timely objection, the record shows no reference by the accused's lawyer to the grade of the court-martial which had previously convicted his client. A conference on this objection was thereafter held outside the hearing of court members—by the law officer, counsel for both sides, and the accused—but the details of this proceeding were not reported. While—as this case demon-

---

[3] Interestingly enough, in providing for the undesirable discharge of servicemen convicted by a civilian court, the Army authorizes such a discharge if they have been convicted of a "felony." AR 615–366, paragraph 21, February 5, 1954. The Air Force, however, in effect incorporates the test of 18 USC § 1 and provides for such discharge if the offense was punishable by confinement in excess of one year. Paragraph 5, AFR 39–22, September 23, 1953.

strates—it is usually desirable that discussions of this nature be set out in the record, the Manual for Courts-Martial makes clear that there is no obligation to include them, absent a request from one of the parties. See Manual, paragraphs 57$g$(2) and 154(c). In the case at bar there can be little doubt that the defense's lawyers were on notice that such a conference would not be reported, for shortly thereafter—and following a second out-of-court conference between the same persons—the law officer stated specifically that "no request was made to have these proceedings transcribed, and the same will not be transcribed." Record, pages 31-32. Defense counsel could hardly have failed to realize that the first conference would also not be made a matter of record unless he so requested.

In any event, we must take the record of a trial as we find it, and we shall not speculate it into error. Cf. United States v. Josey, 3 USCMA 767, 14 CMR 185; United States v. Kupfer, 3 USCMA 478, 13 CMR 34. For all we can detect, therefore, the law officer was quite unaware, when he ruled on the admissibility of the prior conviction relied on for impeachment, that it had been the product of a summary court-martial. The only matter reported in the record which might have led to this knowledge *prior to findings* is to be discerned in a casual reference by the defense counsel in his closing argument. Although admissible evidence of the previous conviction was introduced after findings, this would be wholly irrelevant to the correctness of evidentiary rulings made prior thereto.

However, we need not linger on this point, for it is our conclusion that a previous conviction by summary court is as fully admissible for an impeachment purpose as that of any other sort of court-martial. With respect to impeachment, the Manual speaks of no more than a prior conviction by "a civilian or military court"—without reference of any sort to specific types of courts. Under Article 16 of the Uniform Code, 50 USC § 576, a summary court-martial is denominated one of the "three kinds of court-martial in each

of the armed forces." The jurisdiction of such a court includes "any noncapital offense"—no exception being made in the case of one displaying moral turpitude. Article 19. Moreover—although the Code specifically exempts nonjudicial punishment under Article 15 from the full impact of former jeopardy—no such provision appears to have been made with respect to summary courts-martial. We are certain that the reason is that the summary court-martial was considered to be a true judicial body—a "military court" within the meaning of paragraph 153$b$ (2)($b$) of the Manual for Courts-Martial.

To be sure, the Manual indicates that the "function of a summary court-martial is to exercise justice promptly for relatively minor offenses under a simple form of procedure." Paragraph 79$a$. Elsewhere it is stated that certain crimes "involve moral turpitude and are not to be treated as minor"—and this same Manual section speaks of other offenses "which are more serious than the average offense tried by summary courts-martial and should not ordinarily be treated as minor." Paragraph 128$b$. Also, Article 10 of the Uniform Code limits pretrial confinement as to "an offense normally tried by a summary court-martial." Clearly in military law it is envisaged that a serious offense—one involving moral turpitude—will ordinarily *not* be tried by a summary court. Yet, with the exception of capital crimes, nothing whatever *precludes* the exercise of summary court jurisdiction over serious offenses. See Manual, paragraph 33$h$. We can only assume that the Manual's draftsmen were cognizant of this court-martial's jurisdiction—which is plainly set out in the Uniform Code. Their failure, then, to carve out an express exception for the summary court in the present particular convinces us that no such limitation was intended. Further, we find no predicate in the Manual for building any sort of exception for inferior *civilian* courts. Yet it would be incongruous to conclude that, under the Manual for Courts-Martial, a witness may be questioned concerning a prior conviction of petty larceny rendered by a

697

civilian police court, but could not be asked of the same previous offense if he had instead been found guilty by summary court-martial. This exact result would be compelled if we were to accept the suggestion of appellate defense counsel to the effect that a previous conviction by a summary court is not usable for impeachment.

With reference to the preceding discussion, we mention in conclusion that counsel are ever free in argument to comment on the nature of the forum which rendered the conviction availed of for an impeachment purpose. For example, if the existence of a summary court conviction has been established, it is clearly open to counsel to argue that the offense must not have been heinous, else it would not have been referred for disposition to such a tribunal —but instead to a special or general court-martial.

## VI

In arguing the present and certain related cases before this Court, counsel have seemed in wide divergence as to the right of a witness to explain the circumstances of a previous conviction. Under the 1949 Manual there could have been little doubt on the point—since in paragraph 139b it was provided that, before introducing proof of a prior conviction, "the witness must first be questioned with reference to the conviction sought to be shown, in order that he may have an opportunity of denying or of admitting *and explaining it.*" (Emphasis supplied.) The wording of paragraph 153b (2), the corresponding section of the current Manual, has been rephrased—and it seems that the object of the alteration was to delete the requirement that a witness be questioned with respect to a previous conviction as a predicate for the introduction of extrinsic evidence of it. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 242. On the other hand, we find no revelation of an intent to limit the right of a witness to explain the circumstances of a previous conviction.

Of course, we are cognizant that a substantial division of authority exists on this very point. See 166 ALR 211. We prefer, however, the view taken by the Court of Appeals for the District of Columbia in United States v. Boyer, 150 F2d 595:

". . . it is unfair to the witness to permit no explanation, particularly when he is at the same time a defendant in a criminal case and 'the prior conviction, though permitted solely for the purpose of affecting the credibility of the defendant, may have some tendency in the minds of the jury to prove his guilt of the crime for which he is then on trial.' It may have such a tendency even when it has no actual bearing on his credibility. Whether the witness is or is not a defendant, if the opposing party introduces his previous convictions we think the witness should be allowed to make such reasonably brief 'protestations on his own behalf as he may feel able to make with a due regard to the penalties of perjury.'[4] [Wigmore on Evidence, 3d ed., § 1117 (3)] Since not all guilty men are equally guilty and some convicted men are innocent,[5] [Cf. Borchard, Convicting the Innocent (1932).] we think the witness should be allowed either to extenuate his guilt or to assert his innocence[6] [Wagman v. United States, 6 Cir., 269 F. 568, certiorari denied, 255 U. S. 572, 41 S. Ct. 376, 65 L. Ed. 792.] of the previous charges."

As that court noted, this is the view favored by Dean Wigmore. See Wigmore, Evidence, 3d ed, § 1117(3).

## VII

The cross-examination in the instant case fell safely within the bounds of impeachment permitted by the Manual for Courts-Martial. Accordingly, we find no error and the decision of the board of review must be, and hereby is, affirmed.

Chief Judge QUINN and Judge LATIMER concur.