UNITED STATES, Appellee

v

WILLIAM P. KELEHER, Master Sergeant,
U. S. Army, Appellant

14 USCMA 125, 33 CMR 337

No. 16,507

July 12, 1963

Captain *Ronald L. Gainer* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod* and *Captain David M. Gill*.

Captain *Peter J. McGinn* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper* and *First Lieutenant James J. McGowan*.

## Opinion of the Court

KILDAY, Judge:

The accused master sergeant was noncommissioned officer in charge of the Transient Officers Section, Officers' Open Mess, Kishine Barracks, Yokohama, Japan. A shortage in accounts led to his present difficulties. Arraigned before a general court-martial on a charge of wrongfully appropriating $117.85, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, he pleaded not guilty. He was, however, convicted as charged, and the court sentenced him to bad-conduct discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the findings of guilty and so much of the sentence as provided for bad-conduct discharge and total forfeitures, and a board of review in the office of The Judge Advocate General of the Army thereafter affirmed.

Accused thereupon petitioned this Court for grant of review, and we elected to consider arguments on two issues assigned by appellate defense counsel. They involve a record of a prior conviction of the accused, admitted into evidence against him on the merits, but subsequently removed and stricken from evidence; and the law officer's instructions as to the permissible inference to be drawn from failure to account. The pertinent facts may appropriately be recounted in the course of our treatment of the respective issues.

I

The situation giving rise to the issue concerning the prior conviction is both unusual and involved. It warrants recitation in considerable detail, in order that the question may be considered in proper perspective.

After the prosecution had rested its case in chief against accused, individ-

126

ual defense counsel called for an out-of-court hearing. Thereat, he requested an advisory opinion[1] by the law officer as to the admissibility of a two-year-old conviction for wrongful appropriation by the accused in the event the latter testified in his own behalf. Trial counsel urged that such conviction might properly be used to impeach accused, while individual defense counsel contended to the contrary. At that point the law officer indicated informally, but subject to modification upon showing of other circumstances, his reluctance to permit such impeachment.

When court resumed in open session, accused took the witness stand under oath on the merits. On cross-examination trial counsel adduced the fact that, some two years previously accused had been bookkeeper for the Fort Bragg Fish and Wild Life Association. As such, he kept the records and handled cash. Thereupon, over individual defense counsel's strenuous objection, trial counsel introduced evidence that accused had been convicted by general court-martial for wrongful appropriation of over $50.00 from that organization. The defense motion for mistrial based on the admission of this prior conviction was denied.

The admissibility of this prior offense had, in the meanwhile, been the subject of yet another out-of-court hearing. Trial counsel had argued that the crime was a breach of a fiduciary relationship and urged that it might properly be allowed in evidence as an offense involving moral turpitude, to impeach accused. Individual defense counsel, on the other hand, asserted that the prior delict was inadmissible, either for that or any other purpose. The law officer, in overruling the defense objection and permitting proof of the conviction for wrongful appropriation, did not state any basis for his ruling.

When both parties had rested, the law officer held a closed session to apprise counsel of his proposed instructions. In the course of that hearing he indicated his intent to admonish the court-martial that it might consider the prior conviction "only as it may go to the specific intent in the instant alleged offense and for no other purpose." Trial counsel asked that it also be considered on impeachment, but got no response and the matter was dropped when the defense interjected a request for further advice relative to the question of remoteness of the conviction, which the law officer agreed to give.

Arguments to the members of the court-martial ensued,[2] whereupon the prosecution requested an out-of-court hearing prior to instructions. Thereat, trial counsel made the following request:

"TC: Yes, sir, at the time the law officer instructed—admitted the prior conviction of the accused by general court-martial—at that time the basis of the ruling was not of course stated and it was my impression it was being admitted on the primary ground for which it was offered. At the time the instructions were gone over I didn't I admit think of it. However, upon reflection, I feel that the basis upon which the law officer admitted it, it should not be admitted on that basis, and I would join with the defense counsel in having the court instructed to disregard it.

"LO: The record of previous conviction—

"TC: Upon reflection it is my contention that it is probably not admissible for that purpose. Of course I stand by my original position that it is admissible for purpose of impeaching accused, but on the basis of showing specific intent I don't think it is and I request the law officer instruct the court to disregard it."

The law officer indicated he would give an appropriate instruction, and the defense did not oppose the same. Individual counsel indicated, however, that he deemed introduction of the evidence to be erroneous from the start and still did; that the evidence was made no reference whatever in his summation to the previous wrongful appropriation conviction.

---

[1] See United States v Harris, 10 USCMA 69, 27 CMR 143.

[2] It is to be noted that trial counsel

already before the court and "the damage has been done and probably the best thing to do is to sustain my motion on a mistrial, which we ask the law officer to do at this time, and in lieu of that of course the instruction may cure it—I don't know."

Upon resumption of proceedings in open session, the law officer ordered the prior conviction stricken from evidence. The following colloquy took place:

"LO: Counsel for both sides have requested that Prosecution Exhibit 7 be withdrawn from the evidence before the court. That request is granted. The court is instructed that it must disregard all evidence relating to the previous conviction when determining the guilt or innocence of this accused as to the presently charged offense. If any member feels that he cannot totally disregard the evidence relating to previous conviction in determining the guilt or innocence of the accused to the presently alleged offense he should now so state.

"LT COL HENSLEY: From a legal point of view what would this mean? We have heard it. It's been a part of the case, a rather dramatic part of the case.

"LO: Are you able to completely disregard it in deliberating the guilt or innocence of the accused?

"LT COL HENSLEY: Yes, I think I can.

"LO: Are all members able to completely disregard it?
"Apparently so.

"IC: I should like to for this reason. I want to address my remarks at the court generally. Now naturally in arguing this case I remember one time I referred to the fact that the court of course was aware that I did not agree with the law officer at the time this statement was admitted, but it had been admitted and therefore you would have to consider it. Now perhaps I have planted this in your minds. The point that I should like to know is—do you feel that you can continue with this case

and render your judgment in view of all the other facts in the case as if there were no evidence, as though he had never been convicted, so far as you are concerned, of this offense?

"As Col Hensley said, you have heard it, and it is hard to wipe out of your mind, and this is the danger that I think. Now if any of you feel that you cannot completely disregard it as if it had never happened then this is the test; I think it should be applied. You all feel that you could do that? If any member feels he couldn't he could excuse himself from the court.

"LO: Apparently all members feel—

"TC: I might state at this time that this is one of the developments that come up in a trial and I, as representative of the government, add my exhortation to the members of the court to disregard completely and don't even consider it as a factor in this case, because, as the law officer indicated, it is no longer a factor in this case at this point.

"PRES: You may proceed.

"LO: Apparently court members feel that they are able to totally disregard it."

Appellate defense counsel contend that the above events constitute "multiple prejudicial error," and require reversal of the findings of guilty. Briefly, the argument runs that the prior conviction was inadmissible, and that the law officer's instruction to disregard that item could not, under the circumstances of this case, be effectual.

In United States v Moore, 5 USCMA 687, 18 CMR 311, we considered the question of impeachment by prior court-martial convictions. This Court concluded, in that instance, that if the imposable punishment for the crime extended to dishonorable discharge or confinement for more than one year, or if the offense involved moral turpitude, such a prior conviction might properly be admitted for the purpose of impeachment. The defense points out to us, just as it did at trial, that the maximum penalty for the wrongful ap-

propriation accused committed at Fort Bragg includes only bad-conduct discharge and confinement for six months. See Table of Maximum Punishments, Manual for Courts-Martial, United States, 1951, paragraph 127c, page 223. Thus, that branch of the test laid down in *Moore* is not met. Neither, appellate defense counsel argue, is wrongful appropriation an offense of moral turpitude, and they invite our attention to United States v Perry, 20 CMR 638, where a board of review indicated in a footnote that misappropriation of property need not involve moral turpitude.

It is this last argument we cannot accept, for wrongful appropriation is not—as the defense contends—"nothing more than an unauthorized temporary borrowing." To the contrary, as long ago as United States v Norris, 2 USCMA 236, 8 CMR 36, we held that mere "wrongful taking" did not constitute an offense in military law, and more recently this Court elaborated on that same principle in United States v Hayes, 8 USCMA 627, 25 CMR 131. Thus, in *Hayes* it was stated:

"Not every wrongful taking constitutes a violation of Article 121. See United States v Norris, 2 USCMA 236, 8 CMR 36. The intent to deprive the owner of his property, either permanently or temporarily, must include a *mens rea*. Therefore, the mere 'borrowing' of an article of property without the prior consent of the owner does not make out either of the offenses defined in Article 121. Something more is required, and that something is criminal intention. Thus, if one visits the office of a friend, and, finding him absent, takes a book which he has come to borrow, leaves a note to that effect, and returns the book the next day, there is no intent to steal or misappropriate the book and, necessarily, no violation of Article 121." [8 USCMA at pages 629, 630.]

Clearly, wrongful appropriation involves both a *mens rea* and a specific criminal intent. Indeed it ■ is universally agreed that larceny is a crime of moral turpitude, and wrongful appropriation is identical to larceny with the exception that the specific intent need involve only temporary deprivation, rather than permanent. While the latter element differs in the two offenses violative of Article 121, the nature and quality of the intent in each is nonetheless identical. And, we are sure, it must be concluded moral turpitude is present in both.

It is quite true, as we pointed out in United States v Moore, supra, that it is difficult to set down a ■ comprehensive definition of moral turpitude. However, as was there noted, it is beyond cavil that offenses in which fraud is an ingredient involve moral turpitude. In this connection, see the decision of the United States Supreme Court in Jordan v De George, 341 US 223, 95 L ed 886, 71 S Ct 703 (1951), and the numerous Federal decisions there collated.

Significantly, the terms of Article 121, Uniform Code of Military Justice, supra, provide that the specific intent in both larceny and wrongful appropriation may be "to *deprive or defraud*" the true owner of property wrongfully taken from him. (Emphasis supplied.) Thus, in addition to the pecuniary aspects of these offenses, fraud is expressly involved. Indeed, in *Moore* we pointed out that "fraud"—insofar as moral turpitude is concerned—may be involved even without pecuniary loss and in instances involving deceit rather than fraud in the narrow sense. The same factors also apply where the criminal intent is to deprive the owner of his property or to appropriate the same to the use of another.

It is, therefore, plain why larceny is accepted by all as a moral turpitude offense. Hence, it is ■ equally clear that wrongful appropriation, which involves the identical factors, falls into the same category. Accordingly, to the extent the board of review opinion in the *Perry* case would indicate a contrary conclusion, we expressly decline to follow it. Jordan v De George, supra; United States v Moore, supra; United States v Hayes, supra.

In view of the foregoing discussion, it is manifest that accused's conviction

by general court-martial for wrongful appropriation at Fort Bragg was admissible to impeach his credibility as a witness. And we are not deterred in this conclusion by the defense argument of remoteness. Although the two year interval between that ▮▮ offense and the instant trial goes to the weight to be attached to this evidence, we cannot say the period renders the prior conviction so remote as to be inadmissible as a matter of law. Cf. United States v Moreno, 10 USCMA 406, 27 CMR 480.

Thus, the prior conviction was admissible on the grounds the prosecution offered it—as impeachment. We recognize that at one point in the second interlocutory hearing on admissibility trial counsel made passing reference to motive and intent, emphasizing the breach of fiduciary relationship involved. It must be borne in mind, however, that the law officer had, at the first hearing, indicated his advisory opinion on admissibility was subject to change upon a showing of additional facts. Along that line, trial counsel indicated the breach of fiduciary trust common to both situations, and only made reference to intent after the law officer himself had inquired regarding the same. Just as the defense never retreated from its view that the evidence was inadmissible, trial counsel consistently and throughout urged that the item constituted proper impeachment. Moreover, it is of interest that the item was raised only with respect to testimony by accused; the evidence was not offered on the case in chief where, if admissible on intent, its use would be entirely proper quite without regard to whether accused chose to take the witness stand.

Under those circumstances we are not confronted with a situation where the prosecution craftily plotted to bring to the attention of the court-martial improper evidence that accused was a "bad man," then later to "save his case" by asking the law officer to have the court-members disregard that which had been paraded before them. To the contrary, trial counsel offered the prior conviction for the purpose of impeachment, on which basis it was perfectly admissible. It was not until the law officer discussed his proposed instructions that counsel was aware the court-martial would be permitted to consider the evidence for any other purpose. Then, when for the first time the law officer made this disclosure, trial counsel commendably declined to mention the prior offense in his argument, and asked the law officer to strike the evidence and caution the members of the court. We perceive no improper or untoward conduct on the part of trial counsel and the issue, therefore, boils down to whether there was no choice but to grant a mistrial when the evidence was stricken, rather than admonishing the court-martial to disregard the evidence.

A mistrial is a stringent remedy, and the choice between the two courses lies largely within the ▮▮ sound discretion of the law officer. Cautionary or limiting instructions may, in many cases, serve as a palliative. See Hopt v People of Utah, 120 US 430, 30 L ed 708, 7 S Ct 614 (1887); United States v On Lee, 193 F2d 306 (CA2d Cir) (1951); United States v O'Briski, 2 USCMA 361, 8 CMR 161; United States v Patrick, 8 USCMA 212, 24 CMR 88. Of course, such an admonition may not always be efficacious, and each case turns on its own facts. See United States v Justice, 13 USCMA 31, 32 CMR 31, and cases cited therein.

In the case at bar, the colloquy that followed the law officer's instruction to disregard may leave some doubt as to whether the court-martial could heed the advice, for the interest in the item on the part of at least one member is evident. On the other hand, the admonition by the law officer was emphatic, and both trial and defense counsel joined in the exhortation to disregard the evidence. All members indicated their ability to abide by the instruction and willingness to follow it and, although not conclusive of the question, that fact is entitled to substantial weight. But, in any event, as this Court unanimously held in a prior case of this sort, also involving impeachment, "error without resulting prejudice does not warrant reversal."

130

United States v Moreno, supra, at page 409.

No fair risk of prejudice to accused is discernible under the facts of this case. Had the evidence ▆▆▆▆▆ █ been left for consideration by the court-martial as impeachment of accused's veracity, and an instruction given limiting the use of the evidence to that single area, clearly no problem would be presented. Here the cautionary admonition went even further; the court was charged to ignore entirely, perfectly admissible evidence. But, even if we were to assume, *arguendo*, that the court-martial members were unable—despite their contrary averments—to follow the law officer's instruction and disregard the prior conviction, we would be faced with the anomalous contention that accused was prejudiced because the triers of fact were made aware of what was —as we have seen—perfectly admissible evidence. We are unable to accept that position. The issue before the court-martial in the case at bar was clear cut. There is no question but that accused was the custodian of nonappropriated funds, and he was admittedly unable to produce the same when an accounting was demanded. If the court concluded he was guilty of peculation, they would convict; if they entertained any reasonable doubt that the moneys were—as accused claimed— stolen from his keeping by unknown individuals, then a finding of not guilty would be required. Accordingly, and in view of the fact that the evidence was indeed admissible, we find no fair risk that accused's conviction was occasioned because the court-martial was made aware he was a "bad man."

We agree with the board of review that accused was not denied a fair trial because of this occurrence. The first assignment of error, therefore, must be resolved adversely to accused.

II

The second issue need not detain us long, as it presents the same problem as was recently before us in United States v Lyons, 14 USCMA 67, 33 CMR 279, which decision is largely dispositive here.

As previously mentioned, accused was unable to produce the missing funds of which he was custodian when demand was made upon him. He admitted he did not keep the funds in a safe, or a filing cabinet with combination lock, provided for valuables in his office. Neither did he place the money in a locked desk drawer, in which cash was also kept from time to time. Instead, he claimed that he had the money in two envelopes which he placed in an unsecured locker in his unlocked quarters, where he believed it would be safe, but from which place it was taken without his knowledge or permission by unknown persons. The theory of the prosecution, on the other hand, was that accused was in debt and pressed for funds, and that he himself took the missing money.

In advising the court-martial on the issue posed, the law officer instructed as follows:

". . . The mere failure on the part of a custodian to account for entrusted funds does not in and of itself constitute a larceny or wrongful appropriation. However, a failure to account when demand is made or when an accounting is due will permit an inference that the custodian has wrongfully converted the property to his own use. The inference which may be drawn from the accused's failure to account for or deliver entrusted property at the time an accounting or delivery is required may be considered by the court, together with all the other facts and circumstances of the case, in determining the issue of the accused's guilt or innocence. However, such an inference is not mandatory and such an inference may be rejected or accepted as the court deems fit."

And he further advised the court members:

"Gentlemen, before you may convict the accused of the offense charged you must be satisfied beyond a reasonable doubt by legal and competent evidence that the money was not stolen from the accused or otherwise taken from him without his con-

131

sent or lost by him through his negligence."

The above instructions follow closely the language used by this Court in United States v Crowell, 9 █ USCMA 43, 25 CMR 305. They make clear that mere failure to account does not itself constitute wrongful appropriation, but that a permissible inference that a custodian converted the funds may arise if he fails to account for the same upon demand or when an accounting is due. The law officer's charge further leaves this inference to be considered against the backdrop of the whole case, and apprises the members that they are wholly unfettered as to whether or not to draw any such inference. Finally, the law officer admonished the court that it must acquit unless satisfied beyond reasonable doubt that the money was not stolen or taken from accused without his consent or lost by him through negligence.

It is clear beyond peradventure, therefore, that the law officer did not err in his instructions in this regard. See United States v Lyons, supra. See also United States v Crowell, supra; and United States v Sellers, 12 USCMA 262, 30 CMR 262. The second assigned error, accordingly, is also without merit.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

The principal opinion concludes that wrongful appropriation is a crime involving moral turpitude, and a conviction thereof is admissible in evidence in order to impeach the credibility of an accused who has elected to testify in his trial. I disagree and am of the view that introduction of Sergeant Keleher's previous conviction for that offense, under the particular circumstances of this case, entitled the defense to have its motion for a mistrial granted.

I

The evidence presented to the court-

martial a relatively simple issue of fact. The Government established that accused was the custodian of certain funds entrusted to his care; that demand was made upon him for an accounting; that he could not produce the necessary monies; and other circumstances tending to indicate that he had criminally appropriated them to his own use. On the other hand, the accused, admitting that he had possession of the sum involved in his fiduciary capacity, declared that he had kept it in his quarters because of uncertainty as to the combination of the safe which he properly should have used. According to his testimony, the funds were apparently stolen from his room.

Thus, a clear factual question was presented for the court members. If, under the instructions of the law officer, they drew the permissive inferences for which the United States contended and accordingly rejected accused's purported explanation of his inability to account for the monies entrusted to his care, it was their duty to reach the findings which, in fact, resulted. On the other hand, if they attached sufficient credibility to accused's testimony concerning the loss to raise in their minds a reasonable doubt concerning his guilt, it was equally their responsibility to acquit him.

It was against this backdrop that trial counsel, over proper objection, succeeded in obtaining the admission in evidence of accused's previous conviction for wrongful appropriation of more than $50.00, property of the Fort Bragg Fish and Wildlife Association, while serving as bookkeeper for that organization.

II

Acting pursuant to the authority conferred upon him under Uniform Code of Military Justice, Article 36, 10 USC § 836, the President has prescribed a rule of evidence which provides:

"A witness may be impeached by showing that he has been convicted by a civil or military court of a crime which involves moral turpitude or is such as otherwise to affect his credi-

bility." [Manual for Courts-Martial, United States, 1951, paragraph 153b(2)(b).]

In United States v Moore, 5 USCMA 687, 18 CMR 311, this Court definitively examined the foregoing rule with particular reference to "the vagueness which . . . inheres in the phrase 'moral turpitude.'" United States v Berthiaume, 5 USCMA 669, 679, 18 CMR 293, 303. Pointing out that there was "authoritative justification for the view that a felony necessarily involves moral turpitude" and that we entertained "no doubt that an offense serious enough to bear the stigma of a dishonorable discharge possesses the seriousness of felony, and as well bears a heavy content of moral turpitude," the Court emphasized the importance of the imposable sentence under the Table of Maximum Punishments, Manual, supra, paragraph 127c, as a guiding principle in concluding whether an offense involved the ingredient necessary to its use for impeachment purposes. With unanimity, it was declared at page 696:

"It may be suggested that for the fluidity of the concept of 'moral turpitude,' we are substituting a series of rules based on the penalty imposable for an offense. Such a comment does not deter us, however—*for we have no hesitation in adopting the quantum of punishment imposable as a rule-of-thumb for determining an offense's gravity. After all, if there is aught to criminological theory, the punishment assessed against a crime mirrors well the public disapprobation of that offense. . . . Turpitude, too, may not inappropriately be deemed the obverse of the public disapprobation of the act involved.* Further, a witness who previously had not been deterred from crime by a serious penalty, might well pay less heed than the average man to the penalties assigned for perjured testimony." [Emphasis supplied.]

In United States v Gibson, 5 USCMA 699, 18 CMR 323, the Court, applying the tests which it had summarized in United States v Moore, supra, held that convictions of using disrespectful language and failure to obey a lawful order did not involve moral turpitude. It said, at page 703:

". . . Disrespect and failure to obey are peculiarly military offenses, *with no exact or approximate counterparts either in the moral or civil order under ordinary rules of interpretation. Moreover, the penalties provided for them by the Table of Maximum Punishments are insufficient to raise them to the level of felonies.*" [Emphasis supplied.]

Turning again to the Manual, supra, it is to be noted that, with the single exception of the felony of wrongful appropriation of a motor vehicle, the maximum possible sentence for this offense—depending upon the value of the property involved—ranges from confinement at hard labor for three months and partial forfeitures for a like period to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for six months, the latter limitation being applicable in the case of accused's previous conviction. Table of Maximum Punishments, Manual, supra, paragraph 127c. And, with respect to the nature and degree of the punitive separation thus authorized, the Manual, supra, also notes that it is appropriate "as a punishment for bad conduct *rather than as a punishment for serious offenses of either a civil or military nature.*" (Emphasis supplied.) Manual for Courts-Martial, supra, paragraph 76a(7). On the other hand, the use of a dishonorable discharge is said to be reserved for offenses "usually recognized by the civil law as felonies" or involving "conditions of dishonor." Manual, supra, paragraph 76a(6).

These considerations impel me to the conclusion that wrongful appropriation, as here involved, is not an offense involving moral turpitude, within the meaning of the rule as to use of prior convictions for impeachment purposes. Unknown as an offense at common law, it, too, has "no exact or approximate counterparts either in the moral or civil order." United States v Gibson, supra; Clark and Marshall, A Treatise on the Law of Crimes, 6th ed, § 327. It was enacted by Congress as a part of a

**133**

purposeful scheme to punish " 'offenses heretofore known as misappropriation, misapplication, joyriding, wrongful taking and using, and wrongful conversion.' " United States v Norris, 2 USCMA 236, 239, 8 CMR 36, 39; Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1245. Appreciating the distinction between this delict and the crime of larceny, the Manual itself prescribes a punishment limited to that appropriate for "bad conduct rather than . . . for serious offenses." Thus, as we noted in United States v Moore, supra, "the public disapprobation" of the offense is not such as to characterize it with that degree of reprehension required for attachment of the phrase "moral turpitude." And this is, as recognized by the Manual's limitations on its punishment, the military's own view as to the crime's minor nature.

Moreover, while it is difficult to assign a precise definition to the phrase "moral turpitude," civil courts have generally held it to involve a grave infringement of the moral sentiment of the community or acts of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men and to society in general as distinguished from offenses which are merely *malum prohibitum*. In re Hawke, 63 NE2d 553, 557 (Ohio) (1945); State v McCarthy, 255 Wis 234, 38 NW2d 679 (1949); In re Boyd, 48 Cal 2d 69, 307 P2d 625 (1957); United States v Zimmerman, 71 F Supp 534 (ED Pa) (1947). Yet, in the instant case, the community involved, *i.e.*, the armed forces, has characterized wrongful appropriation of property other than a motor vehicle to be nothing more than "bad conduct," the maximum penalty for which cannot extend beyond imprisonment for six months and a bad-conduct discharge. It is an offense which normally would be within the jurisdictional limits of a special court-martial and, except for the Army's practical elimination of the punitive discharge in such inferior judicial proceedings, this accused's conviction would no doubt have been adjudged by that type of tribunal.

Such treatment of a crime hardly indicates that it is regarded by the military community as a grave breach of its moral code or that it is an offense stamped with the baseness, vileness, or depravity seemingly inherent in the term "moral turpitude." Rather, as noted by defense counsel, it would seem to be safely within the category of a mere unauthorized use of another's property or money, albeit characterized with the necessary criminal intent. Cf. United States v Hayes, 8 USCMA 627, 25 CMR 131. In short, I am convinced that the crime of wrongful appropriation, generally speaking, is an offense *malum prohibitum* and, as such, does not involve moral turpitude.

The principal opinion, however, discarding the guidelines which were laid down in United States v Moore, supra, emphasizes that wrongful appropriation *may* involve an intent to defraud and that such serves to render it a despicable offense. But it is a peculiar type of fraud which may form an element of the crime in question. Normally, that sort of criminal deceit involves cheating one of money or property with some degree of finality. Cf. Hammerschmidt v United States, 265 US 182, 68 L ed 968, 44 S Ct 511 (1924). Wrongful appropriation, however, involves an intent temporarily to deprive or defraud and necessarily connotes the ultimate return of the property in question to its owner, who is merely temporarily shorn of its use and possession. Thus, it hardly embraces the type of intent or deceit to which the Supreme Court has referred as "the touchstone" by which existence of moral turpitude may be determined to exist. Jordan v De George, 341 US 223, 95 L ed 886, 71 S Ct 703 (1951). Surely, this criminal "borrowing" may not be equated to larceny as if Congress made no distinction between the two offenses. Code, supra, Article 121, 10 USC § 921; House Hearings, supra, page 1245.

In sum, then, I am of the view that wrongful appropriation, as here involved, is not a crime involving moral turpitude. United States v Moore, supra; United States v Perry, 20 CMR 638. From this conclusion, it must fol-

134

low that accused's prior conviction therefor was not admissible in evidence against him. Nor can it be gainsaid that its receipt was prejudicial and required the defense motion for a mistrial to be granted.

We have many times pointed out that whether an instruction to disregard inadmissible evidence should be held effective to purge the error of harm depends upon the circumstances of the case. United States v Patrick, 8 USCMA 212, 24 CMR 22; United States v Grant, 10 USCMA 585, 28 CMR 151; United States v Krokroskia, 13 USCMA 371, 32 CMR 371. "The naive assumption," said Mr. Justice Jackson, in Krulewitch v United States, 336 US 440, at page 453, 93 L ed 790, 69 S Ct 716 (1949), "that prejudicial effects can be overcome by instructions to the jury, . . . all practicing lawyers know to be unmitigated fiction." Here, reliance on the "fiction" is precluded, for the circumstances are such

that it is most improbable that the court members could have ignored the matter in their deliberations. Indeed, one member, in indicating his own misgivings as to complying with the law officer's instructions, referred to the conviction's introduction as "a rather dramatic part of the case." Moreover, a conviction for misconduct in a fiduciary capacity identical to that charged against the accused at the present trial was here involved. Under the circumstances, there is more than a fair risk that accused's claim of loss through apparent theft, in light of the previous conviction, would receive short shrift at the hands of the fact finders. United States v Krokroskia, supra. Accordingly, I would conclude that the defense motion for mistrial should have been granted, and record my disagreement with the contrary view of my brothers.

I would reverse the decision of the board of review and order a rehearing.