UNITED STATES, Appellant and Cross-Appellee

v.

CARL RUSSELL, Master Sergeant, U. S. Army, Appellee and Cross-Appellant

3 USCMA 696, 14 CMR 114

No. 2652

Decided February 5, 1954

Lt Col William R. Ward, U. S. Army, and 1st Lt Ezra B. Jones, Jr., U. S. Army, for Appellant and Cross-Appellee.

Lt Col George M. Thorpe, U. S. Army, and 1st Lt John W. Fuhrman, U. S. Army, for Appellee and Cross-Appellant.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused was convicted by general court-martial in Germany of negligent homicide and wrongfully leaving the scene of an accident in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to a bad-conduct discharge, total feitures, and confinement at hard labor for eighteen months. Following approval by the convening authority, an Army board of review set the findings aside for reasons hereinafter more fully described. Pursuant to Article 67 (b) (2) of the Code, 50 USC § 654, The Judge Advocate General of the Army has certified the question of the propriety of the board's action for the deter-

mination of this Court. We have also granted a petition for review filed by the accused to determine the sufficiency of the evidence to establish the offense of negligent homicide, and the sufficiency of the law officer's instructions upon the charge of leaving the scene of an accident.

Because our answer to the certified question depends to some extent upon the sufficiency of the evidence, we consider first the contentions raised by the accused.

The evidence of record may be summarized as follows: At midnight on November 1, 1952, the body of Private George L. J. Belanger, was found in the center of the highway near the entrance of the Kaserne, in Babenhausen, Germany. Medical authorities determined that he had died as a result of a traumatically incurred injury to his skull. Shortly thereafter, the accused was overheard telling a companion in the noncommissioned officer's club at the Kaserne that he had struck a soldier. Questioned by an agent of the Criminal Investigation Division two days later, the accused stated that he had spent the afternoon and evening drinking cognac in several cafes with fellow soldiers. In the statement he set forth the following facts. He described his condition as "pretty well intoxicated." At approximately 11:00 p.m., the group decided to return to the Kaserne and entered the accused's automobile. The accused drove. As they neared the Kaserne, the accused saw a soldier walking on the highway and at the same instant the left side of his vehicle struck said soldier. Sergeant Dugger, one of the accused's companions said, "Stop. You've killed a man." The accused stopped, looked back, but since he saw nothing proceeded on his way. After discharging his passengers, he went to the noncommissioned officer's club where he told some friends that he had struck a soldier. This statement was reduced to writing and signed by the accused, after he initialled several typographical errors. At the trial it was received in evidence without objection.

The visits to the various drinking establishments were further described by the accused's companions, each of whom admitted being quite intoxicated. All agreed that the accused operated his vehicle properly and was not intoxicated, although he had been drinking with them throughout the evening. Since all of them had fallen asleep, they testified, they had no knowledge of any accident on their return to the Kaserne. Sergeant Dugger denied the assertion attributed to him in the accused's statement. Confronted with a similar statement in his own pretrial statement, he explained that the agent had told him the accused had admitted it, and he accepted it as true at the time. Nevertheless, he was not sure whether or not he had said anything to the accused.

The accused elected to testify in his own behalf. He stated that he had consumed about twelve drinks of cognac during the afternoon and evening in question, and although he was "not exactly sober," he was not drunk. As he approached the Kaserne, something, which he could describe only as a blur, struck the left side of his car near the windshield. Stopping within twenty-five yards, he attempted to get out, but he broke the handle of the door off and could not open it. Rather than disturb his passengers, he turned down the window and looked to the rear. Seeing nothing, he drove on. Arriving at the noncommissioned officer's club, he discovered that the moulding over the left front door, near the windshield post, had been dented, and folded over the door. After straightening it, he entered the club. There he remarked to some friends that he had struck something or someone; but whoever it was, walked off before he could see him. He denied telling the agent that he was pretty well intoxicated, or that he had struck a man walking in the road. Although these remarks appear in his pretrial statement, he explained that they are the conclusions of the agent and do not fairly represent what he said. He acknowledged initialling several corrections and signing the statement, but did so only because of a headache caused by a sinus condition. He testified that because of this, he would have signed anything to terminate the interview.

The defense witnesses testified that

prior to his death, the decedent had attended a party near the Kaserne. While there he had become very drunk, constantly dropped his glasses, and had fallen asleep several times. No one saw him leave to return to his quarters. This testimony was strongly corroborated by the post-mortem analysis of his brain tissue, indicating a high concentration of alcohol.

Several witnesses asserted that they had seen a soldier of Belanger's general appearance, staggering along the highway leading to the Kaserne shortly before midnight. He was obviously intoxicated and fell several times.

Negligent homicide is an unlawful killing resulting from simple negligence. United. States v. Roman, 1 USCMA 244, 2 CMR 150; United States v. Kirchner, 1 USCMA 477, 4 CMR 69. Necessarily, and by the very terms of this definition, the death must be attributable directly to the negligence of the accused. The defense contends that no such causal connection is established by the evidence. Rather, it is argued, the evidence conclusively establishes that the sole proximate cause of Private Belanger's death was his own intoxicated condition, coupled with his poor eyesight.

We do not agree with this contention. The undisputed facts, many of them supplied by the accused, indicate that he operated his car after drinking continuously over a period of approximately eight hours. He found it necessary to turn to the side of the highway and stop several times as other vehicles approached from the opposite direction. Although the section of highway near the Kaserne was straight and level, he failed to observe the decedent who was in the center of the road when struck. On this evidence alone the court was warranted in finding that his ability to operate a motor vehicle was seriously impaired by his drinking. There was other evidence of this fact, which although disputed, the court was justified in believing, and which should be considered on review. United States v. Schultz, 1 USCMA 512, 4 CMR 104.

**700**

The impairment of the accused's ability to exercise his mental and physical faculties fully and rationally, is an indication of drunkenness as delineated in paragraph 191, Manual for Courts-Martial, United States, 1951. The operation of a motor vehicle while in this condition is wrong in and of itself, but it also constitutes a violation of Article 111, of the Code, supra, 50 USC § 705. Clearly the natural and probable consequence of driving an automobile in this condition was the resulting accident. Thus, the accident and death are directly attributable to the accused's negligent conduct. People v. Townsend, 214 Mich 267, 183 NW 177; Williams v. State, 161 Miss 406, 137 So 106; Cain v. State, 55 Ga App 376, 190 SE 371. This conclusion is supported by the fact that the accused left the scene of an accident. This circumstance, coupled with evidence of negligence, is generally regarded as the basis for an inference that such negligence caused the accident. State v. Busby, 102 Utah 416, 131 P2d 510.

We conclude, therefore, that the evidence sufficiently establishes the offense of negligent homicide.

In reaching this conclusion we have considered the evidence of the decedent's condition. While there is no definite proof of the victim's actions immediately before he was struck, it is highly probable that his own intoxication contributed to his death. This circumstance, however, merely indicates contributory negligence on the part of the deceased. Such negligence is not a defense to, or excuse for, crime; nor can it serve to purge of its criminal character an otherwise criminal act. State v. Moore, 129 Iowa 514, 106 NW 16; Cain v. State, supra; State v. Busby, supra.

During the course of his instructions describing the offense of leaving the scene of an accident, the law officer made no mention of the accused's knowledge that he had been involved in any accident. By this omission, the defense contends, the law officer failed to comply

with the provisions of Article 51(c) of the Code, supra, 50 USC § 626, requiring instructions on the essential elements of each offense charged.

This issue is governed by our decision in United States v. Eagleson, 3 USCMA 685, 14 CMR 103. In that case we held that knowledge is not an essential element of the offense. It is an affirmative defense requiring instructions only when reasonably raised by the evidence. In the case at bar, the accused admitted he had struck something. Therefore, he was under a duty to stop immediately to determine what he had struck; and to render assistance to any person who had been injured. Merely looking back over a darkened highway from a point twenty-five yards from the point of contact did not discharge his obligations. The facts of this case did not fairly raise an issue of knowledge. Therefore, no instructions thereon were necessary.

We turn now to consideration of the certified question. During the course of the cross-examination of the accused, the following discussion took place:

"Q. Isn't it a fact that you were convicted of highway robbery as a civilian.

"A. No sir.

"DEFENSE COUNSEL: Now, wait a moment. I am entering an objection on this—.

"LAW OFFICER: You are entering an objection, Colonel Paterson?

"DEFENSE COUNSEL: I will object to that as being incompetent—. There is no foundation for this whatsoever. It is being done solely for the purpose of creating a prejudice and it is highly improper—.

"TRIAL COUNSEL: I want him to give a direct answer to the question and then we will see—.

"DEFENSE COUNSEL: He did.

"LAW OFFICER: Just a moment. Let's clarify our position here. A question was asked and the answer was given, I believe, before the objection had been presented to the court. Just what position are we in, as far as counsel are concerned here?

Colonel Paterson, do you request that the answer be stricken—?

"DEFENSE COUNSEL: No, I want it in the record—.

"LAW OFFICER: You don't at this time, then, request a ruling—?

"DEFENSE COUNSEL: The Law Officer can rule as he pleases but I want the record certainly to show that there is an objection on the part of the Defense Counsel, and the reason for it. It is highly improper and prejudicial. Let the Reviewing Authorities decide on it.

"LAW OFFICER: What is the purpose of this question, Lieutenant Haynes (to Trial Counsel)?

"TRIAL COUNSEL: I am testing the man's credibility and also, whether or not he does have knowledge of police procedures.

"LAW OFFICER: If I have an objection from the Defense Counsel, the objection is overruled. The Trial Counsel will proceed.

"Continued questions by the Prosecution:

Q. Now, what was your answer?
A. No sir.
Q. You state that you never have been convicted for having committed highway robbery?
A. I never committed highway robbery.
Q. Have you ever been convicted on that?
A. No sir."

At the conclusion of the accused's testimony, the defense counsel requested that the law officer admonish the court to disregard the reference to highway robbery. The Law Officer withheld his ruling on this request until the prosecution completed its rebuttal. When no evidence of the conviction was presented in rebuttal, the law officer instructed the court to disregard any comment about highway robbery. The board of review held the question improper, and that the law officer's instructions were insufficient to cure the error. The Judge Advocate General by his certification challenges the correctness of this determination.

When an accused elects to testify on the merits, he is subject to cross-exam-

ination to the same extent as an ordinary witness, and his testimony may be impeached by evidence that he has been convicted of a crime involving moral turpitude or otherwise affecting his credibility. Manual for Courts-Martial, supra, paragraphs 149*b*(1), 153*b*(2)(*b*). Although neither the Manual nor the rules of evidence used in the Federal courts require that a foundation be laid for this type of impeachment, it has been held that an accused may be asked whether he has ever been convicted of a felony. Williams v. United States, 3 F2d 129 (CA8th Cir) (1924); United States v. Fay, 19 F2d 620 (DC Idaho) (1927). In such a case, the prosecution is bound by the answer, unless evidence to the contrary is produced. United States v. Fay, supra; Morgan v. United States, 98 F2d 473 (CA8th Cir) (1938).

In the case at bar, the accused was not asked a general question concerning conviction of a felony. The question was put to the accused in such a manner as to suggest that the trial counsel was in possession of damaging information concerning him. It was, therefore, an affirmative statement not simply an interrogation. The harm implicit in this question was ameliorated somewhat by the accused's immediate denial, by the failure of the prosecution to produce evidence to the contrary, and by the law officer's direction to the court to disregard the subject entirely. The only remaining danger of harm was the bare possibility that the question made such an indelible impression upon the court that its effect could not be erased. Under the circumstances we are required by Article 59(*a*) of the Code, supra, 50 USC § 646, to determine whether the error materially prejudiced the accused.

In United States v. Valencia, 1 USCMA 415, 4 CMR 7, we cited with approval the standard of the Federal courts in assessing errors of this type. There we said:

". . . The test to be applied must, therefore, have two branches. First, does the conduct indicate an intent to deliberately disregard the rules of evidence in order to influence the court, and, second, could the improper remarks have reasonably affected the court's deliberations on the findings and sentence."

Certainly evidence of a conviction of highway robbery was admissible, if the trial counsel had in his possession reliable information of such a conviction, and was prepared at the proper time to present such proof to the court. However, he should have in his possession an admissible record thereof to prevent all question of error should the conviction be denied by the accused. A denial here, uncontradicted, actually tended to discredit the position of the Government and to weaken its case, instead of affecting adversely the interest of the accused.

We are aided in our determination of whether prejudice resulted by a long line of Federal cases. In Morgan v. United States, supra, the prosecutor in three separate questions, described specific crimes and inquired whether the defendant had been convicted of them. Each was answered in the negative. The Circuit Court of Appeals of the Eighth Circuit held these questions improper, but determined that it did not affect the conclusion of guilt reached by the trial court, even in the absence of any admonitory instructions by the trial judge. In Salerno v. United States, 61 F2d 419 (CA8th Cir) (1932), it was held that whenever an abundance of competent evidence of guilt is found in the record, a holding that improper cross-examination deprived the defendant of a fair trial or constituted reversible error is unjustified. See also Kinser v. United States, 231 F 856, 861 (CA 8th Cir) (1916); Ross v. United States, 93 F2d 950 (CA7th Cir) (1937); United States v. Hibbs, 152 F2d 269 (CA 7th Cir) (1945).

In the instant case, competent evidence established beyond a reasonable doubt the guilt of the accused. Under the circumstances, therefore, the bare possibility that some residue of error remained after the improper question was answered in the negative, and after the court had been instructed to disregard the subject, does not require a reversal.

702

The decision of the board of review is reversed. The case is returned to The Judge Advocate General of the Army for action not inconsistent with the views expressed herein.

Judge BROSMAN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I would concur outright were it not for the fact that I believe that knowledge of involvement is an ▇ essential element of the offense of leaving the scene of an accident. For a detailed statement of my views on that subject, see my separate concurring opinion in United States v. Eagleson, 3 USCMA 685, 14 CMR 103, decided this date. In the present case accused judicially admitted that he knew he was involved in a collision; that he stopped; that he attempted to get out of the car, but the door handle broke off; that he turned down the window; that he looked to the rear to determine the nature of the object he had collided with; and that, seeing nothing, he drove on. That testimony effectively eliminated any possibility that knowledge was an issue in this case, and accused is not in a position to contend that the law officer erred, or that he, the accused, suffered any prejudice.