UNITED STATES, Appellee

v

ROBERT L. HARRIS, Staff Sergeant, U. S. Air Force, Appellant

9 USCMA 493, 26 CMR 273

494

No. 10,585

Decided August 1, 1958

 
██ 

*Miss Madeline DeFina* and *Lieutenant Colonel Philip J. Williamson* argued the cause for Appellant, Accused.

*Captain Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted of four specifications alleging that, with the intent to gratify his sexual desires, he took indecent liberties with two girls, one 11½ years of age and the other seven years of age. A board of review affirmed the conviction but reduced the sentence by cutting the period of confinement adjudged from ten years to four years.

In his first assignment of error the accused contends that he was prejudiced by the failure of the con- vening authority to appoint qualified counsel to represent him at the Article 32 investigation. At the trial the accused was represented by military counsel who was qualified under the provisions of Article 27(b), Uniform Code of Military Justice, 10 USC § 827, and civilian counsel who was "a Solicitor in the Supreme Court" of England. No objection was made in regard to the Article 32 investigation, nor was any matter considered in the investigation which was adverse to the accused admitted in evidence at the trial. Under the circumstances, defects in the pretrial proceedings will not justify reversal of an otherwise valid conviction. United States v Mickel, 9 USCMA 324, 26 CMR 104.

Turning to the trial proceedings, the accused maintains he was prejudiced by a ruling of the law officer in connection with his cross-examination by trial counsel. After some questioning of the accused on the merits, trial counsel asked the accused if he knew a girl "named Penny." Objection was made on the ground that the question was immaterial and irrelevant. On being assured by trial counsel that the question affected the accused's "credibility" the law officer permitted him to continue. Trial counsel reframed the question to the following: "Have you committed adultery with a girl named Penny who had a baby by you in June of this year?" Objection was immediately made and court was recessed. During the recess a hearing was held but the proceeding is not recorded. In their brief appellate defense counsel maintain that when the accused resumed the witness stand he was informed by the law officer that "he had to answer the question or be held in contempt of court and that if he denied he committed adultery he would be subject to a prosecution for perjury." The record of trial does not bear out this allegation. The board of review investigated the completeness of the record of trial and concluded that it was "unimpeached." No evidence has been presented to us to overcome this finding.

From the record of trial it appears that when court reconvened the law officer reviewed for the court members the "problem that came up yesterday." He referred to defense counsel's objection on the ground that the accused's "character [was not] in issue" and that it was improper for trial counsel "to attack . . . [it] on cross-examination," and the prosecution's insistence that the question went to the accused's "credibility." He noted for the

**495**

court that he "decided to rule against the defense counsel . . . and to permit the question to be answered." For the "benefit of any reviewing authority" he cited several authorities to support his ruling. The proceedings are as follows:

"LO: Reporter, read back the last question.

"REPORTER: 'Q. Have you committed adultery with a girl named Penny who had a baby by you in June of this year?'

"LO: Now, Gentlemen, I would like to take a few minutes to review the problem that came up yesterday.

. . . . .

[Here follows the explanation and the ruling.]

"LO: Is there any comment from either counsel before I proceed?

"TC: No, sir.

"DC: No, sir.

"LO: Sergeant Harris, did you understand the question?

"A. Yes, sir. The name of the woman is Mrs. Alice Hamp, 'Penny' is a nickname.

"Q. Is it true that she is currently married and has several children?

"A. Yes, she is in the process of getting a divorce.

"Q. But she is still married, is married at the present time?

"A. Yes, sir.

"Q. And has several children?

"A. Yes, sir.

"Q. You are married and have three children?

"A. Yes, sir.

"TC: I have nothing further."

A careful reading of the record indicates that the accused never answered the critical question. His reply to the law officer is simply to the effect that he understood the question. However, the colloquy leaves the impression that in fact the accused had an adulterous connection with Mrs. Hamp. We shall, therefore, consider the claim of error from that standpoint.

Ordinarily an accused who takes the stand to testify on the merits is subject to impeachment upon the same basis as any other witness. In some of the Federal courts the general rule is that a witness cannot be asked about another act of misconduct unless the act is followed by conviction and is one involving moral turpitude or affecting the credibility of the witness, or the witness has opened the door to further inquiry. See United States v Provoo, 215 F2d 531 (CA 2d Cir) (1954); United States v Hubbard, 5 USCMA 525, 528, 18 CMR 149. A broader rule of impeachment obtains in the military in that a witness may be impeached by evidence he has committed a crime involving moral turpitude or affecting his credibility, despite the absence of conviction. Manual for Courts-Martial, United States, 1951, paragraph 153*b* (2) (*b*); United States v Berthiaume, 5 USCMA 669, 18 CMR 293. In United States v Hutchins, 6 USCMA 17, 19 CMR 143, a majority of the Court, going beyond the immediate arguments, applied the broader rule to an accused. However, the opinion makes no reference to provisions of paragraph 138*g* of the Manual. That paragraph specifically refers to impeachment of an accused. It provides as follows:

"If the accused takes the stand as a witness, his credibility may be attacked as in the case of other witnesses. For this purpose, it may be shown that he has been convicted of a crime involving moral turpitude or otherwise affecting his credibility. See 153 *b* (2) (*b*)."

It is arguable that this specific provision in paragraph 138*g* should prevail over paragraph 153*b* which applies to witnesses generally. Whether the distinction is logically or legally sound (United States v Moore, 5 USCMA 687, 691, 18 CMR 311) or whether paragraph 138*g* is merely illustrative of one form of impeachment need not give us pause. The admission of the evidence can be supported on the ground that the accused "opened the door." See United States v Brown, 6 USCMA 237, 19 CMR 363; cf. United States v Hubbard, supra. That this basis of admis-

**496**

sion may have been considered by the law officer is indicated by his reliance upon paragraph 149*b* (1) of the Manual. The paragraph is concerned with the general rules of cross-examination. In part, it notes that an "accused person who voluntarily testifies as a witness becomes subject to cross-examination upon the issues concerning which he has testified and upon the question of his credibility."

Testifying on direct examination the accused admitted that he took Margaret and Gwendoline, the two little girls, and Ray, their 13-year-old brother to the movies on the evening of May 17th. He said that he sat between the girls and that he placed his arm along the back of the seat of Margaret. He maintained that during the showing of the film he did nothing to Margaret except that he "might have even hugged her a couple of times" and that he "might have kissed her." Asked why, he replied: "Well, I have three children of my own and I usually put my arm on the seat back of them." Later, in connection with the charge that he had gotten into bed with Gwendoline and stayed there from about 11:00 p.m. to 5:30 a.m., he denied that he touched the child, but said, "I think I kissed her goodnight, patted her shoulder and told her to go to sleep." He maintained that he "just went to sleep on the same bed." In regard to the other two charges of fondling both children, he stated that in playing with them he might "have tickled" them.

Considering the intimacies the accused admitted that he took with the children in the relative dark of a movie theater and in an unlighted bedroom, he obviously believed it important to provide some explanation. The explanation lies in his voluntary statement that he had three children of his own, and that he customarily acted in a similar manner toward them. In other words, his conduct toward these little girls was purportedly prompted by the same feelings of fatherly tenderness that characterized his relations with his own children. Trial counsel apparently recognized the implication of the accused's testimony and determined to impeach it.

It was established that the accused, a Staff Sergeant, was in England for at least 14 months. Starting with that fact trial counsel attempted to show that the accused's association with and attitude toward his own children was not as close and as tender as the accused implied. His line of attack was calculated to show that habitual fatherly conduct was not the explanation for the admitted intimacies, as represented by the accused, because, in fact, the accused thought so little of, and had so little to do with, his own children, that he committed adultery which culminated in an illegitimate offspring. In short, the accused voluntarily made an issue of his motive in the physical contacts he had with the little girls. He could, therefore, properly be impeached on that issue. The challenged evidence is relevant and material to the matter. We conclude that the law officer did not abuse his discretion in admitting it for purposes of impeachment. United States v Brown, supra.

Finally, the accused contends that he was prejudiced in the post-trial review by inclusion of adverse matter from outside the record which he had no opportunity to rebut. See United States v Griffin, 8 USCMA 206, 24 CMR 16; United States v Vara, 8 USCMA 651, 25 CMR 155. The matters of which complaint is made are contained in a statement by the accused's immediate commander which was considered in the review. The commander noted that the accused performed his duties in an "excellent" manner. However, he went on to say he had received several letters from creditors "concerning Sergeant Harris's failure to pay his debts" and that it had been "revealed" to him the accused had brought different women to the noncommissioned officer's mess on many occasions, and that he had fathered an illegitimate child. Later in his statement, the commander described the women with whom the accused purportedly associated as persons "known to have low moral characters." Also included in the review is a report from the staff judge advocate of the commander exercising special court-martial jurisdiction over the accused. The local

**497**

staff judge advocate interviewed the accused.

The accused informed him he had substantial marital difficulties and that while living apart from his wife had consorted with other women. The report observes that while the acts of which the accused was convicted are "shockingly offensive and morally degenerate" they were not perpetrated in a "bestial" manner. For that reason, and because of the accused's excellent performance of his military duties, the local staff judge advocate recommended reduction of the adjudged period of confinement from ten years to five years. The post-trial review also mentions a petition for clemency filed by two of the six members of the court-martial urging a similar reduction in the period of confinement. A special section of the review deals with the "Appropriateness of Sentence." In it, the staff judge advocate considered the local staff judge advocate's evaluation and the clemency recommendation. He said, however, he did not consider the recommended reduction in the sentence appropriate because of the "depraved" nature of the offenses and the fact that they were committed in the presence of other children of tender years.

Cutting to the core of the alleged adverse comments, only one falls in the class of new matter, namely, the purported failure to pay debts. The allegations of association with women of low moral character is supported by the accused's own admissions to the local staff judge advocate. Reference to the illegitimate child appears in the trial proceedings, and further details were related by the accused in the post-trial interview. Considering the review as a whole, we find no reasonable basis for a claim of prejudice because of inclusion of the extra-record matter. United States v Taylor, 9 USCMA 34, 25 CMR 296.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (dissenting):

Were it not for the ruling of the majority on the second issue, my concurrence would be outright. ▬▬▬ To my way of thinking the reasoning and conclusion reached on that issue is fallacious. The challenged evidence was inadmissible. It was irrelevant and immaterial for the purpose of impeaching the accused's credibility, nor did the accused on direct examination open the door to it. The accused's defense was that his intimacies with the two girls rested upon paternal affection which he was accustomed to demonstrate toward his own children. Trial counsel countered this defense by attempting to dispel the accused's explanation by showing an absence of filial regard. Adulterous conduct has not such a relationship to a filial attitude that this form of conduct would in any way explain or show the accused's motivating factor for intimate physical conduct with pre-adolescent young girls. It has no bearing on behavior pattern of seeking sexual gratification from the very innocent and immature. At most, the information served only to prejudice the court members toward the accused. I would hold reversible error on this issue.