UNITED STATES, Appellee

v

NAVALDO C. MORENO, Technical Sergeant,
U. S. Air Force, Appellant

10 USCMA 406, 27 CMR 480

No. 12,645

Decided May 1, 1959

*Major Dwight R. Rowland* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Sam F. Carter.*

*Lieutenant Colonel Francis R. Coogan* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A general court-martial convicted accused of specified acts of indecent liberties with a five-year-old German girl. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for five years. The convening authority approved the findings and sentence, except he reduced the period of confinement to three years, and the board of review affirmed. We granted accused's petition for review on the sole question whether evidence as to his prior misconduct was prejudicial.

A recital of the evidence adduced to prove this despicable offense is unnecessary. The issue before us is concerned with events which transpired at trial after accused became a witness in his own behalf for the purpose of contesting the voluntariness of a written pretrial statement regarding the instant offense which he had made to an agent of the Office of Special Investigations. As a matter of fact, his testimony raised no issue, but in his cross-examination of accused trial counsel purported to attack his credibility. In so doing, he inquired whether some eight years previously accused had made a statement under oath to an OSI agent

**407**

wherein he admitted having talked on the telephone with an operator, and communicated obscene remarks to her while engaging in an act of sexual deviation. Over defense counsel's objection, accused answered that he did not remember but, upon being confronted with a written statement he had executed, changed his testimony. He denied, however, that some of the statements were true and stated that he could not remember making them. Thereafter, an OSI agent was called as a witness and shown the statement. He testified that he had, in October 1950, taken the statement about the telephone offense from accused, and that accused signed it and had made it voluntarily. The defense again objected and, after some discussion, trial counsel indicated he would abandon that line of inquiry. The law officer then twice admonished the court members to disregard any testimony as to the eight-year-old admissions by accused and, in his final charge to the court, he repeated that evidence of the statement used in an attempt to impeach accused must not be considered.

It is well settled that when an accused elects to testify, his credibility, like that of any witness, is ■ subject to impeachment. See United States v Nicholson, 8 USCMA 499, 25 CMR 3; United States v Gibson, 5 USCMA 699, 18 CMR 323; United States v Moore, 5 USCMA 687, 18 CMR 11; United States v Hubbard, 5 USCMA 525, 18 CMR 149; United States v Russell, 3 USCMA 696, 14 CMR 114; Wigmore, Evidence, 3d ed, § 890. As we said in United States v Hatchett, 2 USCMA 482, 486, 9 CMR 112:

"... Even though an accused testified for a limited purpose this does not preclude the cross-examiner from probing into fields which may weaken or destroy his evidence. ... if they are relevant to test his credibility, the questions are proper and must be answered. An accused voluntarily elects to take the witness stand and in so doing he is subject to being cross-examined on those matters which he testified

about on direct examination and to other matters which affect his credibility as a witness."

See also, Wigmore, supra, § 987, at page 617. That is not to say, however, that "Every departure from the ■ norm of human behavior may . . . be shown on the pretext that it affects credibility." United States v Long, 2 USCMA 60, 70, 6 CMR 60. But, as the board of review noted when it passed on this issue, the impeachment may be by way of evidence "that a witness . . . has committed a crime involving moral turpitude or affecting his credibility, despite the absence of conviction." United States v Harris, 9 USCMA 493, 496, 26 CMR 273. See also United States v Hutchins, 6 USCMA 17, 19 CMR 143; United States v Berthiaume, 5 USCMA 669, 18 CMR 293.

In the case at bar, accused took the stand for a limited purpose only. We are not concerned with evidence ■ which tends to show identity, intent, plan, or design, etc. See Manual for Courts-Martial, United States, 1951, paragraph 138g; United States v Pavoni, 5 USCMA 591, 18 CMR 215. Neither are we concerned with any prior inconsistent statement. The only proper basis for the evidence of prior misconduct is that it reflects on accused's credibility, and its import here was that accused had communicated indecent language to a female. Since imposable punishment for such an offense would include dishonorable discharge (paragraph 127c, Manual for Courts-Martial, supra), it may be brought out on cross-examination to impeach credibility. United States v Moore, supra.

The defense, however, contends that the agent's rebutting evidence in the case at bar was inadmissible. First, they argue, prior misconduct not resulting in conviction may not be proved by extrinsic evidence. The Manual for Courts-Martial states the general rule as follows:

"It is generally not permissible to impeach a witness upon the ground that he has committed a crime affecting his credibility by adducing—

408

by means other than cross-examination of the witness—evidence not amounting to proof of conviction of the crime." [Paragraph 153*b* (2) (*b*), Manual for Courts-Martial, supra.]

See also United States v Shepherd, 9 USCMA 90, 25 CMR 352; United States v Nicholson, supra; United █ States v Berthiaume, supra. Cf. United States v Haimson, 5 USCMA 208, 17 CMR 208; United States v Brown, 6 USCMA 237, 19 CMR 363; Walder v United States, 347 US 62, 98 L ed 503, 74 S Ct 354. Here, the substance of the written statement was brought to the court members' attention during the prosecution's cross-examination of accused. The OSI agent's testimony immediately thereafter therefore established that accused had confessed to the the the obscene telephone conversation. Hence, it falls within the above-quoted proscription and should not have been admitted.

Further, the defense notes that the isolated instance of alleged prior misconduct here occurred some █ eight years earlier. Hence, they urge that it is too remote to be admitted. And, in addition, it must be kept in mind that one of the specific acts of indecency charged in the case at bar was akin to accused's alleged prior act while talking with the telephone operator. Thus the inflammatory nature of the attempted impeachment far outweighed the necessity therefor. Moreover, the evidence showed not that accused had committed the prior offense nor even that any offense had been committed, but rather only that he had confessed to such misconduct. In United States v Berthiaume, supra, this Court divided over the propriety of cross-examining a witness as to whether he had confessed, as distinguished from committed, an offense. The majority there noted, however, that as to confessions different considerations might obtain in the case of an accused as opposed to an ordinary witness and also injected a caveat "with respect to instances where the 'confession' was clearly made in jest, or was involuntary." In that connection we note that defense counsel, with respect to the 1950 statement, argued that no charges were ever preferred and it had not been determined whether the statement was given voluntarily. Certainly, in light of our caveat involuntariness would be material, yet determination of that question would pile still another collateral issue upon the already collateral issue which was before the court-martial. Without attempting to further develop the question, we are sure that under all the circumstances of the instant case—and particularly in light of the inadmissibility of the OSI agent's testimony—it was likewise improper to cross-examine accused about his alleged prior confession.

That, however, is not determinative of the instant appeal. While we do not condone trial counsel's questions—and in fact recommend generally that prosecutors would do well to exercise more discrimination in attempted impeachment, particularly when, as in the instant proceeding, the advantages to the Government's case are so slim when weighed against the dangers—still, error without resulting prejudice does not warrant reversal. Article 59, Uniform Code of Military Justice, 10 USC § 859.

First, there was no issue raised concerning the voluntariness of the pretrial statement given by the █ accused in which he corroborated much of the young victim's testimony. Any impairment of his credibility as a witness on that collateral matter was harmless. Second, as we have previously noted, the law officer three times cautioned the court-martial to disregard the attempted impeachment, and generally it must be presumed that the court followed such instructions. See United States v O'Briski, 2 USCMA 361, 8 CMR 161; United States v Patrick, 8 USCMA 212, 24 CMR 22; United States v Hurt, 9 USCMA 735, 27 CMR 3; Hopt v People of Utah, 120 US 430, 7 S Ct 614, 30 L ed 708. While, as the board of review noted, and as indeed we ourselves have recognized, there may be exceptions to this rule, we conclude this is not such a case, for the posture of

the evidence is such that we are certain there is no risk the court members convicted accused merely because the questioned testimony may have tended to show he was a "bad man."

The prosecution's evidence as to the indecent acts was unequivocal. The accused limited his testimony to the question of voluntariness of his pretrial statement, and the defense offered no evidence whatever tending to disprove the complaining witness's testimony. We are thus faced with a record in which the incriminating facts remain uncontroverted, and in no way impaired by real or imaginary inconsistencies. The little girl testified she left a gasthaus with accused in his automobile to visit a German woman, but that accused drove instead into the woods where he stopped and committed the indecent acts charged. In accused's pretrial statement, which was introduced in evidence, he admitted taking the little girl for a ride in his car, purportedly to visit the German woman but instead stopping the car elsewhere. He claimed, however, that he could not remember what happened thereafter until he returned to the gasthaus, although he admitted the allegations could be true and he could not deny them. Practically all surrounding circumstances were described by independent witnesses and the accused's failure to remember is not in opposition to the victim's testimony. Thus, as the board of review pointed out, his statement does not dispute but in fact corroborates in substantial part the other evidence of record. Furthermore, the child's story was entirely consistent with independent testimony as to time and the movements of the parties. In this setting, and considering the law officer's cautionary instructions, we agree with the board's conclusion that there was no fair risk of material prejudice to the accused. See United States v Nicholson, supra; United States v Hurt, supra.

Accordingly, we find no merit in the contention that accused was prejudiced. The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.