UNITED STATES, Appellee

v

ROBERT C ROBERTSON, Jr., Airman First Class,
U. S. Air Force, Appellant

14 USCMA 328, 34 CMR 108

No. 16,975

December 27, 1963

*Major Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

KILDAY, Judge:

Appellant was tried by general court-martial convened at Glasgow Air Force Base, Montana, on a charge of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920, and a charge of housebreaking with intent to commit rape, in violation of Article 130, Uniform Code of Military Justice, 10 USC § 930. He was convicted of the charge of rape and was also convicted of the lesser included offense of unlawful entry, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to bad-conduct discharge, total forfeitures, confinement at hard labor for two years, and reduction to airman basic. The findings and sentence were approved by the convening authority and affirmed by a board of review in the office of The Judge Advocate General of the Air Force.

This Court granted review on two assignments of error. The assignments will be set out herein in connection with our discussion of each thereof.

The facts indicate that at the time of the occurrences involved, the community of Glasgow, Montana, was observing its "Diamond Jubilee." In connection with that celebration the appellant and his wife, accompanied by another member of the Air Force and his wife, went from the Air Force Base to the community of Glasgow where they began a round of visits to dancing and drinking establishments. In the course of these visits appellant and his companions encountered the alleged injured party and her husband, also an airman, who were in the company of other friends. Thereafter the groups merged and, together, continued to visit establishments where they drank and danced until the bars closed at 2:00 a. m. Thereupon, the injured party and her husband, and appellant and his wife, together with the couple with whom they had gone to Glasgow, returned separately to the quarters of the latter couple for a final drink. All three couples lived in the 200-unit family housing area. Appellant's quarters were about five streets removed from the quarters of the other two couples who lived in adjoining apartments in the same building. The latter two couples were close friends while appellant and his wife were only casually acquainted with the alleged injured party.

Upon arriving at the base, the alleged injured party and her husband entered their own apartment to rest for a time before rejoining the party for the final drink. The other ladies busied themselves in driving the baby sitter home and, in the absence of the ladies, appellant and his male companion continued drinking in the lat-

ter's apartment until the two women returned. Thereafter, appellant's wife departed for her own quarters, but appellant chose to remain at the party.

The alleged injured party testified that being fatigued she went upstairs in her quarters and lay on the bed, fully clothed, to rest. Shortly thereafter her husband came upstairs and lay fully dressed on the same bed. Both fell fast asleep. The alleged injured party asserted that she became aware someone had engaged in an act of copulation with her while she was asleep but assumed it to be her husband. Momentarily thereafter she opened her eyes and saw appellant at the foot of the bed and then observed her husband asleep beside her. She screamed, awakening her husband. Further details of the facts is deemed unnecessary to a consideration of the questions presented.

Both prior to trial and while testifying on the merits at the trial, appellant denied committing the offense. By cross-examination of the prosecution witnesses, defense counsel seriously questioned the identification of appellant by the alleged injured party and her husband; and developed from other witnesses that the identification of appellant as the guilty party, immediately after the occurrence, had not been unequivocal.

The proceedings at that point in the trial give rise to the first granted issue which is as follows:

> Whether the law officer abused his discretion in allowing matters of prior misconduct before the court, matters which were highly inflammatory and prejudicial to accused's rights.

During cross-examination, trial counsel submitted a document to appellant and secured his identification of it as a statement in writing made by him. This document was offered in evidence and defense counsel objected, whereupon an out-of-court hearing was held. The written statement was made some four months prior to the occurrences here involved. It constituted an out-of-court statement containing the warning required by Article 31, Uniform Code of Military Justice, 10 USC § 831, and other matters common to such statements. Therein the appellant admitted he had attempted a housebreaking of a house trailer at Glasgow Air Force Base, occupied by a woman, with intent to commit the crime of adultery. However, in addition to such incriminating admissions, the statement contained matters which would have explained or mitigated appellant's action. The explanatory matter was that his efforts to enter the trailer were in accordance with an agreement with the woman occupant for a tryst therein.

Trial counsel vigorously contended the statement to be admissible generally and without a limiting instruction as to the purpose for its admission into evidence. The law officer sustained the defense objection to the admission of the statement, but informed trial counsel he would be permitted to cross-examine appellant as to the facts of the prior misconduct revealed by the statement and that he would give an instruction that the same were admitted as affecting the credibility of the appellant as a witness.

Trial counsel proceeded to cross-examine the appellant and elicited from him an admission that he attempted to enter the trailer house in question; a denial that he then did damage 'to the trailer house, but an admission that he had made a statement to the contrary; a statement that he thought he had not cut the screens and broke the locks on windows of the trailer house, but an admission that he had made a statement to the contrary; an admission by appellant that the transaction occurred at about 3:30 o'clock in the morning, incidentally the approximate hour of the alleged rape here involved. At this point, the law officer directed trial counsel, instead of going into many details of the earlier transaction, to get to the substance of it.

Thereupon trial counsel propounded the following questions to appellant and received the following answers:

> "TC: . . . Airman Robertson, did you not attempt to enter the trailerhouse of Mrs. M . . . for the purpose of having sexual intercourse with Mrs. M . . . ?

"A: I did.

"Q: And were you not at that time a married man?
"A. Yes, sir, I was."

In proper time, defense counsel objected to the admission of the statement and to the cross-examination as to prior misconduct on numerous grounds, including, that it was irrelevant and immaterial; that acts of misconduct cannot be used to impeach a witness or the character of the accused unless there is a conviction; that the evidence of such prior acts was highly prejudicial and did not bear any relevancy or close connection to the charge on trial; that upon a balancing of interest between the prosecution and the accused, the probative value thereof was not equal to, or more necessary than, the inflammatory nature of it; that its admission would be prejudicial to the extent it would deprive accused of a fair trial; that the same raised unfair inferences of guilt of the offense on trial. After the information above stated had been elicited from appellant, defense counsel moved for a mistrial and such motion was denied. At this point and in his final instructions, the law officer instructed the court-martial that the same was to be considered only as it affected the credibility of appellant as a witness, and that it was to be disregarded in its entirety for any other purpose, including a determination as to whether the accused was guilty or innocent of the offense for which he was on trial.

"The extent of cross-examination with respect to a legitimate subject of inquiry is within the sound discretion of the court." Paragraph 149*b*, Manual for Courts-Martial, United States, 1951. Substantial portions of that paragraph seem to have been taken from, or are a paraphrase of, Alford v United States,

282 US 687, 75 L ed 624, 51 S Ct 218 (1931). Reference to the last mentioned case is contained in the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951.

The American Law Reports Annotated contain a series of cases and exhaustive annotations on the subject of, "Right to cross-examine accused as to previous prosecution for, or conviction of, crime, for purpose of affecting his credibility." That this opinion be not unnecessarily extended, the interested reader is referred to the following cases and the annotation to each on the above quoted subject: Morrison v State, 85 Texas Crim 20, 209 SW 742, 6 ALR 1608 (1919); Ex parte Marshall, 207 Ala 566, 93 So 471, 25 ALR 339 (1922); State v Jackson, 336 Mo 1069, 83 SW 2d 87, 103 ALR 350 (1935); State v Velsir, 61 Wyo 476, 159 P2d 371, 161 ALR 233 (1945).

United States v Provoo, 215 F2d 531 (CA 2d Cir) (1954), relates to questions asked of the defendant on cross-examination. In that case a panel composed of Judges Swan, Medina, and Harlan, the latter presently a member of the United States Supreme Court, unanimously stated:

". . . It is true that a defendant who takes the stand subjects himself to cross-examination, within the limits of the appropriate rules of evidence, like any other witness, and may be cross-examined for the purpose of impeaching his credibility. . . . In the Federal courts there has been an impressive unanimity of view on the point before us. As generally held, specific acts of misconduct not resulting in conviction of a felony or crime of moral turpitude are not the proper subject of cross-examination for impeachment purposes.[1]

---

[1] In a footnote the opinion cites the following cases from designated circuits. The list includes cases in the District of Columbia and seven of the ten other circuits, leaving two circuits from which no cases are cited. The footnote follows:
"Campion v Brooks Transp. Co., 77 US App DC 293, 135 F2d 652;

Scaffidi v United States, 1 Cir, 37 F2d 203; United States v Klass, 3 Cir, 166 F2d 373; Simon v United States, 4 Cir, 123 F2d 80, 85, certiorari denied 314 US 694, 62 S Ct 412, 86 L ed 555; Henderson v United States, 6 Cir, 202 F2d 400, 405; Pearson v United States, 6 Cir, 192 F2d 681, 699; Ross v United

• • • • •

". . . As for reason, we do not conceive that inquiry into every accusation of criminal or vicious conduct will further the search for truth. Where, as here, the defendant's general character has not been put in issue, it is difficult to justify any examination other than into the trait of veracity. No authority has been cited which suggests that homosexuality indicates a propensity to disregard the obligation of an oath. The sole purpose and effect of this examination was to humiliate and degrade the defendant, and increase the probability that he would be convicted, not for the crime charged, but for his general unsavory character. Permitting it was error."

See also Lovely v United States, 169 F 2d 386 (CA 4th Cir) (1948).

Our very extensive reading in this area convinces us that United States v Provoo, supra, accurately states the existing Federal rule on this question. Whether the general Federal rule applies in military jurisprudence depends upon other considerations. Article 36 (a), Uniform Code of Military Justice, 10 USC § 836, provides as follows:

"The procedure, including modes of proof, in cases before courts-martial, courts of inquiry, military commissions, and other military tribunals may be prescribed by the President by regulations which shall, so far as he deems practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter."

In United States v Smith, 13 USCMA 105, 32 CMR 105, we examined thoroughly into the meaning and effect of Article 36, supra, and stated:

"We conclude that Article 36, Uniform Code of Military Justice, supra, falls within the category considered above. Accordingly, we hold it is a valid delegation to the President of the power, by regulations, to prescribe the modes of proof before courts-martial.

". . . But, at the same time, we fully agree that a valid regulation promulgated by the President, in conformity with a power properly delegated to him by the Congress, has the force of law. . . ." [13 USCMA at pages 118, 119.]

It becomes necessary, therefore, that we examine pertinent provisions of the Manual for Courts-Martial, United States, 1951, to determine whether the same establish a rule for courts-martial different from the general Federal rule so clearly enunciated in United States v Provoo, supra.

Paragraph 138g reads in pertinent part, as follows:

"Evidence of other offenses or acts of misconduct of the accused.—The general rule is that evidence that the accused has committed other offenses or acts of misconduct is not admissible as tending to prove his guilt, for ordinarily such evidence would be useful only for the purpose of raising an inference that the accused has a disposition to do acts of the kind committed or criminal acts in general and, if the disposition thus inferred was to be made the basis for an inference that he did the act charged, the rule forbidding the drawing of an inference of guilt from evidence of the bad moral character of the accused would apply."

The same paragraph of the Manual points out that if evidence of other offenses or misconduct has substantial value to prove something other than a fact to be inferred from the disposition of the accused, the same may be admissible. It then proceeds to give examples of cases or situations in which

States, 7 Cir, 93 F2d 950; Echert v United States, 8 Cir, 188 F2d 336; Packineau v United States, 8 Cir, 202 F2d 681; Little v United States, 8 Cir, 93 F2d 401, 408, certiorari denied 303 US 644, 58 S Ct 643, 82 L ed 1105; Lennon v United States, 8 Cir, 20 F2d 490, 494; Ingram v United States, 9 Cir, 106 F2d 683."

the same may be admissible when it tends to identify the accused as the perpetrator of the offense charged; when it tends to prove guilty knowledge or intent, if guilty knowledge or intent is an element of the offense charged; when it tends to prove motive; or when it tends to refute a claim, express or implicit, made by the accused that his participation in the offense charged was the result of accident or mistake.

That paragraph concludes with the specific provision:

"If the accused takes the stand as a witness, his credibility may be attacked as in the case of other witnesses. For this purpose, it may be shown that he has been *convicted* of a crime involving moral turpitude or otherwise affecting his credibility. See 153*b*(2)(*b*)." [Emphasis supplied.]

We note that trial counsel offered evidence of the prior misconduct for all purposes and opposed any limiting instructions. However, the law officer admitted the same for the limited purpose of affecting the credibility of appellant as a witness. We agree with the law officer that such evidence was not admissible for the specific purposes mentioned in the Manual and detailed above in this opinion. We are here concerned with whether the same was admissible for the purpose of affecting credibility.

It will be noted that paragraph 138*g* supra, is designated by the title, "Evidence of other offenses or acts of misconduct of the accused." And its text is limited to the purpose expressed in the title. On the other hand, paragraph 153 of the Manual, supra, is entitled, "Credibility of witnesses; impeachment of witnesses." Nowhere in paragraph 153 is specific mention of the accused made. Specifically as to paragraph 153*b*(2)(*b*), the language used is "witnesses" and the examples and particular cases mentioned refer only to witnesses other than the accused.

As early as United States v Berthiaume, 5 USCMA 669, 18 CMR 293, the late Judge Brosman pointed out cogent reasons for a different rule in the cross-examination of an "ordinary" witness as distinguished from the accused as a witness. In that case, with Chief Judge Quinn concurring, Judge Brosman said:

"In connection with a slightly different problem, we have pointed out that it is impermissible to use the prior acts of misconduct of an *accused* for the purpose of revealing a criminal disposition—from which the court-martial might infer that he had committed the offense for which he is being tried. United States v Haimson, 5 USCMA 208, 17 CMR 208. The danger in allowing the use of such evidence is not to be found in its lack of relevance, but rather in the possibility that the members of the court may conclude that conviction and punishment are merited by the accused—regardless of whether they entertain reasonable doubt as to his guilt under the charge being heard. However, in the impeachment of an ordinary witness like Beaulieu —one who does not stand accused before the court-martial—slightly different considerations apply. There is no risk here that he will be convicted of an offense by reason of past misdeeds, because the court is without power to effect this result." [Emphasis in original opinion.] [5 USCMA 678.]

In United States v Harris, 9 USCMA 493, 26 CMR 273, Chief Judge Quinn indicated the possibility of such a distinction as that discussed by Judge Brosman. In that case, after quoting the provisions of paragraph 138*g* as to asking an accused with regard to prior convictions, the Chief Judge said:

"It is arguable that this specific provision in paragraph 138*g* should prevail over paragraph 153*b* which applies to witnesses generally. Whether the distinction is logically or legally sound (United States v Moore, 5 USCMA 687, 691, 18 CMR 311) or whether paragraph 138*g* is merely illustrative of one form of impeachment need not give us pause. The admission of the evidence can be supported on the ground that the accused 'opened the door.'"

It is worthy of note that paragraph 139*b*, Manual for Courts-Martial, U. S. Army, 1949, limited evidence of prior misconduct of *all* witnesses to *convictions* and uses the express language:

"It is not permissible to show commission of a crime for purposes of impeachment other than by proof of conviction of the crime."

The Manual for Courts-Martial, United States, 1951, should not be read *in vacuo*. Of cogent importance is the language of the Manual it replaced. It is not unimportant, therefore, that the 1951 Manual contains a shorthand repetition of the rule as it applies to the accused, even though there may be an obvious broadening of the area of impeachment of other witnesses. Paragraph 149, Manual for Courts-Martial, United States, 1951.

But there are sound reasons for restricting the scope of cross-examination of an accused, as is aptly demonstrated by the following quotation from Lovely v United States, 169 F2d at page 389:

"The rule which thus forbids the introduction of evidence of other offenses having no reasonable tendency to prove the crime charged, except in so far as they may establish a criminal tendency on the part of the accused, is not a mere technical rule of law. It arises out of the fundamental demand for justice and fairness which lies at the basis of our jurisprudence. If such evidence were allowed, not only would the time of courts be wasted in the trial of collateral issues, but persons accused of crime would be greatly prejudiced before juries and would be otherwise embarrassed in presenting their defenses on the issues really on trial. In the case at bar for instance, not only was the trial prolonged by controversies foreign to the issue before the jury, but accused was called upon to defend another charge of rape, while his hands were full defending the charge contained in the indictment, and the jury was necessarily given the impression, although his character had not been placed in issue, that he was a bad man who had been guilty of other crimes and who

might well be convicted on that account."

It is difficult to conclude that the framers of the Manual for Courts-Martial, United States, 1951, would change so fundamental a rule of law, and one so firmly established in the Federal system, without the incorporation therein of more specific language. The least that could be expected would be in the nature of paragraph 140*a* on the corroboration of a confession as to the *corpus delicti*. As we held in United States v Smith, supra, paragraph 140*a* provides for the military a rule different from that existing in other Federal courts. But in that instance the elements necessary of proof are specifically recited in the paragraph. In the matter before us the opposite seems to be true, for paragraph 138*g* authorizes inquiry into convictions only.

As to the prejudice to one on trial in contesting collateral issues, as pointed out in *Lovely*, supra, no better example than this case will soon arise. The subject matter of the prior misconduct was contained in a written statement, read by the law officer, indicating that the very basic and rudimentary forms of justice would require the complete adjudication of the prior instance, for that document contained strong explanatory and mitigating matters.

In the more recent case of United States v Britt, 10 USCMA 557, 28 CMR 123, Chief Judge Quinn observed:

". . . However, some time ago we called attention to the provisions of paragraph 138*g* of the Manual which pertains specifically to impeachment of the accused. . . .

"We observed that under a literal reading of the above paragraph impeachment of an accused is limited to instances of misconduct, involving moral turpitude or affecting credibility, which are followed by conviction. United States v Harris, 9 USCMA 493, 496, 26 CMR 273. This was the rule in the 1928 and 1949 Manuals. Manual for Courts-Martial, U. S. Army, 1928, paragraph 124*b*; Manual for Courts-

Martial, U. S. Army, 1949, paragraph 139*b*. Indeed, there are cogent reasons for differentiating in this area between the accused and other witnesses. United States v Berthiaume, supra, page 678; United States v Moore, 5 USCMA 687, 18 CMR 311; Wigmore, Evidence, 3d ed, § 983 (4)."

In the even more recent case of United States v Krokroskia, 13 USCMA 371, 32 CMR 371, Judge Ferguson said for a unanimous Court:

". . . In the past, we have noted our increasing concern with 'the lack of "discrimination in attempted impeachment" on the part of Government counsel.' United States v Britt, 10 USCMA 557, 560, 28 CMR 123, 126; United States v Moreno, 10 USCMA 406, 27 CMR 480. And we long ago pointed out that 'Every departure from the norm of human behavior may not be shown on the pretext that it affects credibility.' United States v Long, 2 USCMA 60, 70, 6 CMR 60, 70. Indeed, a review of our decisions will show that we have many times had occasion to repeat that injunction. United States v Nicholson, 8 USCMA 499, 25 CMR 3; United States v Moreno, supra, and cases cited therein. And see United States v LaCount, 13 USCMA 160, 32 CMR 160.

"Moreover, in United States v Britt, supra, we adverted to the general military rule that acts of misconduct involving moral turpitude or affecting credibility may be shown on cross-examination without regard to proof of conviction, but suggested that this broad principle might be limited to witnesses other than the accused."

See, generally, in addition: United States v Long, 2 USCMA 60, 6 CMR 60; United States v Russell, 3 USCMA 696, 14 CMR 114; United States v Haimson, 5 USCMA 208, 17 CMR 208; United States v Hubbard, 5 USCMA 525, 18 CMR 149; United States v Moore, 5 USCMA 687, 18 CMR 311; United States v Gibson, 5 USCMA 699, 18 CMR 323; United States v Hutchins, 6 USCMA 17, 19 CMR 143; United States v Nicholson, 8 USCMA 499, 25 CMR 3; United States v Shepherd, 9 USCMA 90, 25 CMR 352; United States v Moreno, 10 USCMA 406, 27 CMR 480; United States v Arevalo, 11 USCMA 417, 29 CMR 233; United States v LaCount, 13 USCMA 160, 32 CMR 160.

We conclude that, in this area, the Manual for Courts-Martial, United States, 1951, does not establish a different rule in trial by courts-martial and that the general Federal rule as exemplified in United States v Provoo, and other cases, is the rule governing impeachment of an accused's credibility in such trials.

The record not revealing that appellant was convicted of the prior misconduct, the law officer erred in permitting trial counsel to cross-examine him with reference thereto. This error is manifestly prejudicial and requires the reversal of the conviction.

The remaining assignment of error requires resolution in order to provide guidelines at a possible rehearing. It inquires:

Whether the law officer erred in denying defense counsel's motion to strike, and to instruct the court to disregard improper questions asked by trial counsel of accused's wife, which questions implied that she had threatened certain prosecution witnesses in an effort to get them to change their testimony.

Appellant's wife testified as a witness for him on the merits. On cross-examination she was asked whether she had threatened the alleged victim and another witness with prosecution for perjury unless they changed the testimony they gave at the pretrial investigation. Defense counsel did not object when the questions were asked, but did object after the asking of them and a denial by the witness that she had threatened such witnesses. Defense counsel also moved to strike the questions and answers on this subject. The law officer observed that the questions had been asked and answered. Defense counsel replied that he would like to have the questions and answers stricken

from the record and an instruction given to the court to disregard them because of the inferences they raised. Whereupon trial counsel responded:

"Your Honor, I feel that possibly members of the court should be afforded the opportunity to determine whether or not this witness is telling the truth with regard to those particular questions."

The law officer stated no more than, "The objection is overruled."

We believe the questions asked of appellant's wife were within the permissible limits of paragraph 149b, Manual for Courts-Martial, United States, 1951; and as to bias, Alford v United States, supra. However, having received a negative answer to his questions, trial counsel was bound by such answers. United States v Russell, 3 USCMA 696, 14 CMR 114; United States v Arevalo, 11 USCMA 417, 29 CMR 233. It was improper for trial counsel to make a statement implying that members of the court were free to determine whether or not the witness was telling the truth with regard to those questions. The impropriety of the statement of trial counsel was aggravated by the action of the law officer in overruling the objection without comment on the statement of trial counsel. In the event of a rehearing there should not be a recurrence of this incident.

The decision of the board of review is reversed. The record will be returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.